THE STATE OF FLORIDA EX REL. ATTORNEY-GENERAL, PLAINTIFF, VS. PENSACOLA & ATLANTIC RAILROAD COMPANY, DEFENDANT.

1. General Rule 4, adopted by the Railroad Commission, September 23, 1890, and requiring each railroad company to post in a conspicuous place, and keep continuously posted in each of its stations a copy of the schedule of its freight and passenger rates, revised and adopted by the commission for the use of the company, rules and regulations, official classifications and table of distances, means that the publication shall be in placard or bill form, and that the placards shall be so attached to something in a conspicuous place in each station that they can in the position in which they are placed, or without being removed, be read conveniently by the public, and that they shall be kept posted in this manner continuously.

Nailing up by one corner in a conspicuous place in a station, and in such manner as to be accessible to everyone, a pamphlet of about eleven printed pages, containing the rules and regulations governing the transportation of passengers and freight or a similar pamphlet containing the classifications, is not a posting within the meaning of the rule, nor is the binding of these pamphlets and the schedules of freight and passenger rates together and placing them conspicuously upon a conspicuous shelf desk in the station agents's office, such a posting.

2. Where a schedule of passenger rates is headed "Pensacola and Atlantic Railroad Ticket Rates," and it states the full sum charged as fare from each station to any other station, that half rates will be charged for children between designated ages traveling with parents or guardian and that no charge will be made for those under a specified age traveling in the same manner, and gives the extra charge to be collected of passengers who omit to purchase tickets, and it is not denied that the charges correspond in amount with the passenger rates revised and adopted by the railroad commission for the use of the company, and it does not appear that passenger rates have ever been prescribed or adopted by the commission in any other form for the company, the schedule will be held sufficient as to its contents, and the company cannot be required in a proceeding by mandamus to state in such schedule the rate per mile or the distances between stations, in the absence of any law or any rule of the commission requiring it.

3. General Rule 4, adopted by the Railroad Commission September 23, 1889, does not require that the schedule of passenger rates shall state the distances between stations.

4. A table which does not of itself or upon its face, give the distance between any two stations on a railroad, is not a table of distances within the meaning intended by General Rule 4 of

the railroad commission. It is not sufficient if the schedule merely supply data for computing those distances between stations.

5. The fact that a schedule of passenger rates is in two parts, or on two cards instead of one, is not, where the two cards may be posted together, and so posted read as one, of itself a violation of the rule requiring the schedule to be posted.

6. In the absence of a rule of the Railroad Commission, or a law, prescribing the size of type in which a schedule of passenger rates or table of distances shall be printed for posting, a court cannot by mandamus direct what size type they shall be printed in.

7. Passenger rule 6, and freight rules 3 and 11 of the rules adopted by the Railroad Commission September 23d, 1889, are not inapplicable to the Pensacola and Atlantic Railroad company. They should be posted as other rules applicable to it.

8. Where a railroad company has under freight rule 3 of the Railroad Commission, the right to make at its discretion special rates reduced below Commission rates for particular persons and places for temporary use, such special rates need not be posted under the requirements of general rule 4 of the Railroad Commission.

9. It is the duty of railroad companies not only to post, but to keep continuously posted, as provided by general rule 4, whatevor falls within its provisions. Furnishing the posters to agents, with instructions to post, does not answer the public duty imposed upon the companies.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*The Attorney-General* for the Plaintiff.

*W. A. Blount* for the Defendant.

RANEY, C. J. :

This is a proceeding in mandamus instituted before this court in the exercise of its original jurisdiction.

1. Among the rules and regulations prescribed by the Railroad Commission is one adopted September 23d, 1889, and known as Rule 4, which was published as a part of "Circular No. 23," and went into effect October 15th, 1889, and reads as follows : Each railroad company shall post in a conspicuous place, and keep the same continuously posted, in each of its stations, a copy of the schedule of freight and passenger rates revised and adopted for the use of such company by the Commission ; a copy or all the rules and regulations prescribed by the Commission for the government of the transportation of freight and passengers applicable to its line of road, and a copy of the official classification ; also copies of all changes made, whether the same shall be made by such railroad company or by the Commission; also a table of distances between each station.

On the 16th day of December, 1889, the Commission issued a "Circular No. 24," addressed "To the railroad companies doing business in Florida," in which it is stated and called to the attention of these compa-

nies that the Commissioners had lately visited a number of stations and offices, and upon investigation discovered that the above rule had not been fully complied with ; that " at no place were the rules and regulations of the Commission, nor the classification of freights posted as the rules and regulations prescribed by the Commission direct. In fact some of the agents alleged that rules and regulations as embraced in Circular No. 23 had not been furnished them at all. In most cases, but not all, of the few instances where any effort was made to do so, they were hung on a nail, in a pamphlet form. This last is not a posting, and is not in compliance with the rules. They should be posted as are the freight and passenger schedules in placard or poster form. (Sec. 6 Railroad Commission Laws.) The schedule of passenger and freight rates were found to have been posted in very few instances, and then very often not in a conspicuous place as the law directs. In some instances they were said to have been torn down, but there was no evidence of any effort to replace them, and thus to keep them continuously posted." This Circular 24 also states that the Commission have, instead of multiplying formal orders; adopted it as a means of calling the attention of the railroad companies to especially the posting, and that after January 1, 1890, the Commissioners will visit the different stations and offices of each railroad doing business in the State, and hope to find that this suggestion has

prompted the careful posting in the manner indicated, appropriately in the freight and ticket offices of the several documents referred to in General Rule Nó. 4.

The complaint made against the respondent, who is alleged to have had due notice of such Rule 4, and of the subsequent Circular 24, is as follows :

That at its station at Marianna, the respondent has made no attempt to comply with the requirements of said rule, and at another station, Milton, has not in full complied with the requirments of the rule.

That at other important stations, viz : River Junction, Chipley and DeFuniak Springs, and at all other stations along the line of its road where much business, passenger and freight, is being done, no pretehse is made of complying with the requirements of said Rule 4, but the company has neglected and refused, and still neglects and refuses to post and keep continuously posted, with exceptions stated, in a conspicuous place in each of its stations :

1st. A copy of the schedule of freight and passenger rates revised and adopted for the use of this company;

2d. A copy of all the rules and regulations prescribed by the Commission for the government of the transportation of freight and passengers applicable to said line of road;

3d. A copy of the official classification;

4th. Copies of all changes, whether the same shall be made by the railroad company or the Commission;

5th. A table of distances between each station.

That in many cases where such posting had been made or attempted, it has been done by hanging in the office at the stations upon a nail, in pamphlet form; that such posting should be done in placard or poster form, for the convenience and information of the public.

The defendant filed an answer, the purport of which will be given in disposing of the several questions presented for decision. The Attorney-General has moved to strike out the answer, and for a peremptory writ, upon the ground that the same discloses the fact that full compliance has not been made to the alternative writ of mandamus, and that the answer is argumentative, uncertain and insufficient, and does not state facts so that a judgment of the court can be had thereon, which motion is accompanied by a statement at points of objection to the answer.

The deficiencies of the answer are not, nor are the objection stated to it, such as call for the exercise of the power to strike out. The motion to strike in the Drew case, 16 Fla., 1, 59, was as to impertinent and surplus matter in a return to a peremptory writ. We shall treat the motion for a peremptory writ as a demurrer to the answer, of which it is the equivalent. State ex rel v. Trustees I. I. Fund, 20 Fla., 402.

The respondent declaring its purpose to have been to comply with Rule 4, says in its answer that shortly

410        SUPREME COURT.

The State of Florida ex rel. v. P. & A. R. R. Co.—Opinion of Court.

after the promulgation of the rule it furnished its
agents at its several stations with the "placards, pos-
ters and papers" hereinafter mentioned with instruc-
tions to post and keep them posted conspicuously at
such stations, and that it is informed and believes
that they were so posted or placarded at the same
time, and at each of said stations except at River
Junction, and respondent has believed them to have
remained conspicuously posted, as no report or com-
plaint of their absence has ever been made to it. That
feeling and believing that it had complied with the
rules of the Commission, it did not in anywise apply
to itself the very general complaint made by "Circular
24," and says it has, with the above exception, com-
plied fully with Rule 4, as it has understood and un-
derstands it, and proceeds to show how it has done so.

II. The respondent submits, as in full compliance
with Rule 4, a copy of a schedule of the freight rates
revised and adopted by the Commission for the use of
respondent, the same being in the form of a card or
bill ten by sixteen inches, and copies of five com-
modity tariff sheets, issued by respondent, and which
are stated to be merely the application to particular
commodities of the classification and rates fixed by the
Commission; copies of which schedule and sheets the
answer states have been placarded. The Attorney-
General admits that if this schedule is kept conspic-
uously and continuously posted in the station houses

of respondent, it will be a sufficient compliance with the rules and regulations of the Commissioners. In view of this admission, and the fact that no exception is taken to the commodity sheets, nor, we may remark, do they seem to suggest any, the answer must be held sufficient as to posting all freight rates at those stations where such schedule and sheets are in fact kept continuously posted in a conspicuous place.

III. The answer exhibits a copy of "Passenger Rates revised and adopted for the use of respondent by the Commission," which it is urged to be a compliance with Rule 4, and says it has been "placarded the front of one copy and the back of a second copy being nailed or posted side by side so as to form one copy." The answer also states that "in addition thereto, there has been posted a *large placard* showing the rates from each station on the road of respondent, to every other station thereon, and to every station on the Louisville & Nashville Railroad."

The Attorney-General suggests that a schedule of passenger rates is a table showing the rate per mile for each full passenger fare, and that to post this there should be a table showing the fare from each station to any other station on the line of road; that the freight schedule, *supra*, shows the sum total for each haul for each distance, giving the distance of each, and so should a properly constructed passenger schedule or tariff.

It is true that the schedule of passenger rates does not expressly state the rate per mile for each full pas-

senger fare, but it (to say nothing of the allegations as
to the "large placard") does show the fare or full
charge from each station to any other station on the
road; and it cannot *on these pleadings* be pretended
that the charges so published do not in amount ac-
cord with the passenger rates prescribed or "revised
and adopted" by the Commission for the use of the
respondent, or that passenger rates for this company
have ever been adopted by the Commissioners in any
form than that of the full charge from each station to
any other shown by this schedule.   Besides this, as
we *understand* the schedule, it does afford through
the numbers on the left of the names of stations in
the middle column, the means of ascertaining the dis-
tance between any two   stations on the road, and
thereby enables anyone to compute the rate per mile
by dividing any given charge from one station to
another by the distance between such stations, but ig-
noring this fact, and the further fact that the freight
schedule gives only charges (per hundred pounds,
barrel, crate, ton and carload) for the distance of ten
miles or less, and ten miles and over fifteen, and for
certain other distances, varying from each other at
least five miles, still we neither find, nor have been
shown any rule  or  regulation of the Commission
which prescribes that the passenger schedules shall
state the charge per mile or give the distance from
any one station to the other stations.   The schedule
presented is headed "Pensacola and Atlantic Rail-
road Ticket Rates," and gives the passenger fare

from each station to every other one, states that
half rates will be charged for children over five years
and under twelve traveling with parent or guardian,
and that no charge will be made for children under five
years traveling under similar care, the extra charge to
be collected when passengers have omitted to purchase
tickets, as well as other information as to passenger
transportation, not necessary to be noticed here.   Even
disregarding entirely the data it seems to afford for as-
certaining distances, it, considering its contents, is a
schedule of passenger rates, which must be held suffi-
cient in the absence of some authoritative definition of
law, or a rule or regulation of the Railroad Commission,
or some custom having the force of law, requiring that
the information it gives shall be in a different form, or
making the statement of the rate per mile or the dis-
tance between stations a necessary constituent of such
schedules.   The function of the writ of mandamus is
to compel the performance of a clear and specific legal
duty, and until some competent authority has made it
the clear duty of the respondent to use a different form
of schedule or to incorporate the information under
consideration in such schedules, it cannot, in this pro-
ceeding, be required to do so.   The contents of the
schedule before us constitute in substance a passenger
schedule giving the fare from any given station to all
other stations, in the only form, so far as the record
informs us or we can for the purposes of this hearing
know, in which passenger rates have ever been adopted
for the defendant by the Commission, and other infor-

·mation, and being such, the fact that we might think the public interest would be advanced by its being in a different form, or having elements which it has not, does not confer any power upon this court, or change the function of the remedy invoked. Rule 4 requires, it is true, a separate table of distances between each station, but whether this provision of the rule has been complied with is a point to be considered hereafter.

It is also objected that the schedule is printed in type of too small a size to inform the public, in the hurry incident to travel, of its contents, and that the passenger rates should be in large type like the copy of the freight schedule. The body of the print is in nonpareil type. The discretion to say in what type the schedule should be has not been vested in us, and until the Railroad Commission shall have prescribed the size of the type and figures to be used by this or any railroad for the purpose in question, we are powerless to aid them in a proceeding by mandamus, the function of which is to enforce the performance of a prescribed legal duty, but not to prescribe one ; just as we are to require the use of a different form of schedule. We cannot assume functions belonging to the Commission, or other functions or departments of the government.

The objection that the schedule is in two parts, likely to become disengaged, is in itself, in the absence of a requirement that the schedule shall be on a single card or sheet of paper, an untenable objection, for if the two cards are in fact kept posted together in a con-

spicuous place in each station in such manner that the two can be read as if they were one card, it is sufficient. The two thus posted up in a reasonably secure manner would stand as long as one card, and there is not such likelihood of their becoming disengaged as to make this use of two cards a violation of the rule as it stands. The record does not show that this schedule has been torn from a pamphlet.

IV. The answer also states that the rules and regulations for the government of the transportation of persons and property on the railroads in Florida, have been "posted in the pamphlet form in which they were caused to be printed by the Commission," and a copy of the same is annexed to the answer and marked "C." "They," says the answer, "were as to freight, in a large part, also contained in the local classification, of which a copy is hereto attached marked 'D,' in which is embodied the practical application of very many of said rules to the classification of freight contained in said exhibit 'D.' In fact the said exhibit 'D' in some instances contained modifications by the Commission of the rules contained in said pamphlet, and therefore more correctly sets forth the regulation of the Commission than did the rules themselves." "The passenger rules were not only posted in said pamphlet 'C,' but have been posted in the placard showing ticket rates."

The exception taken on behalf of the State to the compliance thus attempted to be shown by respondent is, in short, that the rules and resolutions are, neces-

sarily, and as they explain themselves, applicable to each railroad in the State ; and that they should be printed and posted in placard form, they being few in number and easily printed in good-sized type upon a moderate-sized poster. That the Commission is not required to do more than inform the respondent of the rules and regulations, and any subsequent modification of the same ; and that tacking them up in the offices in the pamphlet form in which they were caused to be printed by the Commission, is only a pretence of posting.

The printed pamphlet, "C," of "Rules and Regulations governing the transportation of passengers and freights on the railroads in Florida, prescribed by the Railroad Commissioners," is the entire "Circular No. 23," previously referred to in this opinion, and it purports to have been issued September 23d, 1889, by the Railroad Commission, by an order which is as follows : "The following rules and regulations are prescribed for the government of the transportation of persons and property by the railroad companies doing business wholly or in part within the State of Florida, and all other conflicting therewith being hereby repealed." It contains thirty-six rules, covering about eleven pages printed in long primer type, and the print occupying on each page an average space of six and a quarter inches long, by three and three-quarters inches wide, and has a cover upon which is printed the words first quoted in this paragraph.

The purpose of Rule 4 in requiring these rules and regulations to be kept posted in a conspicuous place in each station is, that the public may see and read, and thereby inform themselves of the contents of the same. The word "post" is defined by Webster as meaning "to attach to a sign post, or other usual place of affixing public notices; and he defines the word "poster" as "a large bill posted for advertising." The meaning of the word "posted," as used in rule 4, is that the rules and regulations should be advertised in the form of a poster in the railroad stations; or in other words, that printed in bill or placard form they shall be so attached to something in a conspicuous place in the stations that they can, in the position in which they are placed or without being removed, be read conveniently by the public. This is the usual and ordinary meaning of the term, posted, as we see it manifested daily in the posting of notices like those of sale, or against trespasses, as well as other kinds. No other construction can be given it without straining its ordinarily understood meaning, nor does any other meaning so well fulfill the purpose and intent of Rule 4, that these rules and regulations should be exhibited in the place stated, for the information and benefit of the public. We do not think the purpose of the act that these rules and regulations should be posted, is met by the use of a pamphlet; such a publication does not come up to the idea ordinarily conveyed by the expression of the rule; a pamphlet is

418  SUPREME COURT.

The State of Florida ex rel. v. P. & A. R, R. Co.—Opinion of Court.

not the form in which notices are ordinarily posted. We are satisfied that if a card containing these rules and regulations should be *kept* hung upon a nail in a conspicuous place in the railroad station, and in such position that while so hung up it could be read with reasonable convenience by the public, the rule would be complied with; but we do not think the fact that copies of this pamphlet have been nailed to the upper left hand corner in such manner that they are accessible to every one, is a compliance with it. This, in our opinion, is the meaning and effect of Rule 4, independent of the circular of December 16th, 1889, and of course there is nothing in that paper that can be construed to deprive the rule of such meaning.

The local classification, exhibit "D," mentioned in this connection, is also in pamphlet form, and for the same reason is insufficient, in so far as it is relied upon as a posting of any part or modification of the rules and regulations.

Very many of the rules prescribed by the Commission, for example Passenger Rule 6, Freight Rule 3, Freight Rule 11, etc., etc., says the answer, are mere restrictions upon railroads, and in the opinion of the respondent, are not required to be posted, but leaving them for respondent to determine what are applicable to it, the respondent submits that before it can be held to be in fault in anywise, the particular rule to be posted should be in fault in anywise, the particular rule to be posted should be specified by the Commission or the court.

JANUARY TERM, 1891.        419

The State of Florida ex rel. v. P. & A. R. R. Co.—Opinion of Court.

We fail to see that etiher Passenger Rule 6 or Freight Rules 3 and 11 are not required to be posted. They are as follows :

Rule 6. A railroad company shall not be prevented from the free carriage of destitute or homeless persons transported by charitable societies, and the necessary agents employed in such transportation ; or from the issuance of mileage, excursion, commutation or round trip passenger tickets ; or from giving reduced rates to ministers of religion ; or from giving free carriage to their own officers and employes ; or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employes ; or free carriage or reduced rates to persons in charge of live stock shipped, fom the point of shipment to destination and return ; or from issuing second-class tickets, for the holders of which second-class tickets so issued, second-class accommodations shall be furnished ; or from granting reduced rates to immigrants, or immigration agents, or persons going to or returning from any place of meeting within this State, of any agricultural, mechanical, industrial, educational, religious or fruit and vegetable growers' association or convention, who are directly connected with or interested in the objects of said association or convention.

Rule 3. The rates specified or hereafter to be allowed for common brick, bone, lumber, shingles, laths, staves, rough stone, empty barrels, corn in the ear, melons by the car-load, straw, shucks, fodder, tan bark, saw dust,

household goods, moss, palmetto leaves and heads, are maximum rates, but the railroads are left free to reduce the same at discretion, and all such rates are exempt from the operation of rule 2. Any complaint as to such rates will, upon presentation, be considered. No rates have been prescribed for articles in the classification designated by the letter S. 'Such articles are subject to special contract. The Commission will entertain complaints of excessive charges for the transportation of such articles in all cases except where the price charged was according to contract between shipper and carrier.

Rule 11. Railroad companies shall not be prevented from the carriage, storage, or the hauling of property, free, or at reduced rates, for charitable purposes, or to or from fairs and expositions for exhibition thereat.

In view of the Commission's order of September 23rd, 1889, adopting the rules, it certainly cannot be said of any one of these rules that it has not been specified by the Commission as "applicable" to respondent, nor do we perceive that either of them is not "applicable" to the respondent, or is of a character that its publication does not materially concern the public. No other rule is designated by the respondent as inapplicable to it, and until such designation is attempted, we must presume that the Commissioners have not burdened the respondent with something in which it can have no concern whatever.

V. Exhibit "D," referred to above, is, in form, a pamphlet of ten pages, and it is entitled, "Louisville

and Nashville Railroad Co.  Local Classification (S. R. & S. S. Association, with exceptions as noted.) No. 5 taking effect November 10, 1890.  Superseding Classification No. 4, and supplement."  The answer also designates this as the official classification adopted by the Commission, and avers that this classification has been approved by the Commission and adopted by the respondent; and that there have been no changes made by the Commission or by the respondent in the rates set forth in this exhibit applicable to the whole line of respondent's road; and that the copies of this pamphlet have been nailed to the upper left hand corner in such manner as to be accessible to everyone.

In view of the allegations of the answer as to this exhibit, which allegations have to be taken as admitted by the State on this hearing, such exhibit must be recognized as being the admitted or proper official classification to be posted by defendant under Rule 4, as we have heretofore defined the term, which definition is not met by nailing up this pamphlet.  The fact that the exhibit was approved by the Commission does not relieve the respondent from posting it.  This allegation as to approval is to be taken as meaning merely the approval of the actual classification of freight as represented by the schedule, and not of the exhibit as a form for posting under Rule 4.  The language of the answer is not broad enough to cover the latter idea or to set up an estoppel against the Commission.

It is said that the Commission has never ruled that a nailing or hanging up of this classification in book form was a posting; but on the contrary (Circular 24) that it was not a posting; but that they have said that if it was thus placed in a conspicuous place, and kept there in each station, they would consider it a compliance with the spirit of the law, and would not interfere unless complaint was made, in which event they would insist upon the placard form. Whether or not there would have been a waiver by the Commission of the requirement of Rule 4, if the railroad company had accordingly kept this pamphlet so placed in a conspicuous place in its station, it is unnecessary for us to decide, as the record fails to show that it has done so. In the presence of Rule 4, and the exposition of it made by the circular of December 16th, 1889, we could hardly enforce a compliance by the company with what it seems the Commissioners would in the absence of complaint, have regarded as a compliance with the spirit of the law.

Respondent claims, under Freight Rule 3, the right to make at its discretion special rates, reduced below Commission rates, for particular persons and places for temporary use, which special rates it says have in almost every instance related to lumber. These special rates, the answer admits, have not been posted, and for the reason the respondent has not believed that the rule required them to be. No question is made by the State as to the right of the respondent to make the special rates it may have in fact made, and assuming,

as such rule 3 seems to concede, that the respondent has, *as to the articles named in that rule*, the right to make at its *discretion* special rates for particular persons and places for temporary use, we do not perceive that their publication or posting falls within rule 4, which requires the posting of only the schedules of freight and passenger rates "revised and adopted for the use of such company by the Commission."

VI. To the complaint that no proper table of distances has been posted in obedience to the requirement of the rule for the posting of a table of distances, the passenger rate schedule discussed in the third subdivision of this opinion, is offered by the respondent as a full compliance with such requirement. This schedule does not of itself, or upon its face, give the distances between any two stations, and this is sufficient reason for holding it not to be a table of distances. Though it furnishes data from which these distances, as we understand such data, may be computed, the distances are not stated in the schedule. It is not in itself a table of distances.

What has been said above as to the size of the type or print of this schedule, is equally as applicable to the same objection when made to it as a table of distances.

VII. Considering the conclusions announced above as to posting, it is hardly necessary for us to say that binding the papers, posters and placards together and placing them "conspicuously upon a conspicuous shelf desk," as has been done in the Marianna station, is

not a posting within the meaning and intent of the rule, even though it be, as alleged in the answer, the desk in the station agent's office where all persons must come who have business with the defendant company, and all such persons and the public have and ex-ercise full and free access to such papers without the intervention of the agent or any other person connected with the defendant, unless such intervention be re-quested by the person desirous of making an investi-gation of rates or other matters.

VIII. Of the statement in the answer that it would cause great expense to defendant to require all the pa-pers submitted with the answer to be put into placard form and placarded, and necessitate in many cases an increase of wall space on which to placard them and the poster required for business in connection with roads out of the State of Florida, and would serve no good purpose to the public, we need only say that the conclusion as to the purpose to be served by such post-ing is but the expression of an opinion, and the general statement that the posting in placard form will cause great expense or necessitate an increase in wall space, cannot be regarded as sufficient to put in question the reasonableness of the rule requiring such posting.

IX. Of course the duty of the defendant under rule 4 is not only to post in a conspicuous place in each sta tion, everything within the requirements of the rule, but also to "keep the same continuously posted." There can be no misunderstanding as to the effect of this requirement, or where the obligation of perform-

ance rests, and a return which should show no further compliance by a railroad company with this feature of the rule than a delivery to the station agents of posters, even of the most satisfactory form, with instructions to post and keep them continuously posted in a conspicuous place in the stations, and that it is informed and believes that they were so placarded and posted at the same time, would necessarily be insufficient. It is the duty of the company both to post and to keep them continuously posted, and the answer fails to show a performance of this duty at any station, even waiving in this connection the deficiencies in the form of some of the papers.

The relator is entitled to a peremptory writ, and judgment will now be entered accordingly ; but as the respondent has expressly declared in its answer its purpose to comply with our views as soon as they shall be indicated, no peremptory writ will be issued by the clerk on such judgment except and until the relators, by the Attorney-General, or other authorized attorney, shall file a *præcipe* requiring it, whereupon it shall be issued by the clerk without further order.