TEDFORD v. EMISON.

Opinion delivered January 12, 1931.

*John D. Shackleford,* for appellant.

*Tom F. Digby* and *Carmichael & Hendricks,* for appellee.

MEHAFFY, J. Appellee, G. F. Emison, filed this suit against the appellant, W. L. Tedford, in the Pulaski Chancery Court to cancel a deed from the State of Arkansas to the appellant based on a tax forfeiture of 1924, under act 129 of the Acts of the General Assembly of 1929 to the east sixty feet of lot one in block twenty-five in North Argenta Addition to the city of North Little Rock, Pulaski County, Arkansas.

The appellee alleged that the deed was void because the act under which the State sold the land to appellant was unconstitutional, contrary to public policy, and creates unethical practices. He also alleged that the deed was void because the purchaser from the State could buy the land for less money than the owner could redeem for; that personal service of the intention to purchase the land should be made upon the owner unless he was a non-resident of the State; that the proceeding is an attempt to confiscate appellee's property without compensation. It was also alleged that the forfeiture and sale for the taxes of 1924 is void, and as such constitutes a cloud upon appellee's title. The prayer is that the deed should be canceled and held for naught. The appellant filed motion asking that appellee be required to deraign his title. The court overruled this motion, and the appellant filed answer denying that appellee was the owner of and in possession of the property. Appellant admitted that he

had purchased the land under act 129 of the Acts of the General Assembly of 1929, but denied that his purchase was a cloud on appellee's title; denied that the act was unconstitutional, and denied that it was against public policy or had the effect of defeating the State of its taxes. Appellant denied that the service of the notice was insufficient, and denied that the forfeiture and sale was void, and asked that appellee's complaint be dismissed.

Parties entered into the following stipulation:

"1. That on the 3d day of June, 1929, the defendant, W. L. Tedford, paid to the State of Arkansas, to obtain its deed to the east sixty feet of lot one in block twenty-five, North Argenta Addition to the city of North Little Rock, Pulaski County, Arkansas, the sum of $30.26.

"2. That the defendant, W. L. Tedford (appellant), put a roof on the house situated on the above described property at a cost of $27.80.

"3. That the defendant, W. L. Tedford, has collected rent on said property from June 1, 1929, amounting to $97.50."

G. F. Emison testified in substance that he was the plaintiff and lived at 1509 Maple Street, North Little Rock, Arkansas; that he was the owner of the east sixty feet of lot 1 in block twenty-five, North Argenta, an addition to North Little Rock; that it was mortgaged to the Building & Loan Association; that he was a peace officer in North Little Rock and had been for two years—since the first of February, 1929; that he was a resident of North Little Rock in April, 1929; that the People's Savings Bank had no interest in the property in question in April, 1929; that he bought the property from the People's Bank September 12, 1922, paid for it in full and obtained a deed from the bank to the property.

The following was then introduced in evidence:

"NOTICE

"To G. F. Emison,

"People's Savings Bank.

    (H. W. Trigg, Jr., Cashier, 4-26.)

"Please take notice that I intend to purchase the following described property from the Commissioner of State Lands, Highways and Improvements on or after thirty days from the date of service of this notice upon you, towit:

"East sixty feet of lot one in block twenty-five in North Argenta Addition to the city of North Little Rock, Pulaski County, Arkansas.

"W. L. Tedford, Proposed Purchaser.

"Filed: R. A. Cook, Sheriff and ex-Officio Collector of Taxes, Pulaski County, Arkansas, 4:45 P. M., April 25, 1929.

"State of Arkansas ⎱
⎰ ss.
County of Pulaski ⎰

"I have this twenty-sixth day of April, 1929, duly served a true copy of the within notice on H. W. Trigg, Jr., cashier of the People's Savings Bank, the president being absent, in person in said county. I was unable to locate G. F. Emison in this county.

"R. A. Cook, Sheriff,

"By A. B. Simmons, Deputy Sheriff."

This witness testified on cross-examination that he bought the property in controversy from Mrs. Bates; that he bought the whole lot, which was in the building and loan; that he bought it in 1922 and soon after that put it in the Building & Loan Association. In 1924 or 1925 it was in the Argenta Building & Loan Association, and at that time his father and mother were looking after the property, which was occupied by a tenant. Witness was in Michigan; that property has always been tenant property, and he never lived on it himself; that it was supposed to be listed in his name for taxation, and if he had known that it was not paid on he would have paid it; that he paid the taxes for 1922 to the sheriff and collector, or that his father and mother did; that he has the tax receipts which he will exhibit, and that he did not know how he lost the sixty feet involved in this suit; that he thought that his father had the abstracts which he had

made for the purpose of making a loan; that the lot may have been divided; that when he bought it in 1922 he bought the whole lot from Mrs. Bates; that he had a tenant on the property in April, 1929, and that the tenant still lives on the property and had for three or four years. Witness did not know whether the People's Bank paid any taxes or not. When he bought the property, it was assessed in the name of Mrs. Bates, or it might have been the People's Bank, and he had it changed to his own name. The tax receipts introduced show only the west 90 feet of the lot was being paid on. The taxes on the land in controversy, the east 60 feet, had not been paid on since 1922. Witness introduced the deed from the People's Savings Bank to appellee. He did not know the 60 feet in controversy was not included in his tax receipts. Taxes were paid by his agent as he was absent from Pulaski County for four years.

Luther Adams testified, in substance, that he was deputy county clerk of Pulaski County and had served as such for 15 years; that there had not been a list of delinquent lands posted in the county clerk's office for the last ten years; that the list had been in the office, but had not been posted up; that he means by posting that the list had never been tacked on the wall in the office; that the delinquent list is about 10 feet long and four feet wide and shows the land which is unredeemed for two years from the date of the sale; that the list is printed and kept in a roll and placed in the book rack; that the printed list usually comes from the printer in rolls and is then put in the book rack on the east wall of the clerk's office. The rack is open and under plain observation in plain view, and is referred to often. Witness said:

"We take it out of the rack and unroll it. The collector is supposed to post these lists in the different townships at the tax-paying places. We have no place on the walls to post the list."

Several years ago when Mr. Brodie was county clerk, a list was tacked up on one of the columns or posts in the

vault. This list shows the unredeemed lands up to December 31st, showing what lands could be redeemed before the following June, and for the two years prior thereto.

Witness knows of no instance where the inquirer failed to ask some one in the office about the forfeited lands about which he was seeking information.

Attorney for appellee stated that the receipt shows this land was sold in 1923 for the taxes of 1922, and the tax receipt for 1924 shows payment only on the west 90 feet. There is nothing in the record to show when the 60 feet in controversy was forfeited to the State.

The chancery court found that appellee was the owner of the land in controversy and was in the actual possession thereof on the 3d or 4th of June, 1929; that he had no notice of the intention of defendant to buy the land from the State of Arkansas; that appellee was entitled to recover from appellant the rent on the property from June 1, 1929, to April 1, 1930; that the deed from the State to appellant should be canceled and held for naught; that appellant was not entitled to recover either the amount he paid to State or of the amount he paid for putting a roof on the house; that appellee should recover $97.50 rent and costs, and that appellee should have the right to redeem the property in question from the State.

The undisputed evidence in this case shows that appellee bought the land in controversy in 1922, paid for it, and received a deed. Taxes were paid on the property in 1922. The lot was evidently 150 feet wide. After 1922, for some reason, the taxes were paid on the west 90 feet and the east 60 feet was not paid on and was forfeited to the State for the taxes in 1924. The appellee himself was absent from the State, and his parents were looking after the property for him. When he left here, the property was occupied by tenants and at the time of the forfeiture and at the time of the purchase from the State by the appellant the appellee's tenants still occupied the property. Appellant undertook to comply with the act

of 1929 by giving the notice required by that act. Notice was directed to the People's Savings Bank and to the appellee, G. F. Emison. Appellant must have ascertained that Emison was the owner or he would not have directed notice to him. The notice was served on the People's Savings Bank, but no notice was ever served on appellee, and appellee had no knowledge or information that the land was delinquent or had been forfeited for taxes until after the purchase by appellant.

It is contended by appellee that act 129 of the Acts of 1929 is unconstitutional and void. We do not find it necessary, however, to pass on this question.

Section 10,084 of C. & M. Digest provides, among other things: "He shall also keep posted up in or about his office such delinquent list for one year."

The undisputed proof in this case by the clerk shows that he did not comply with that part of this section by keeping posted up in or about his office the delinquent list. To post has a well-defined meaning, and it does not mean keeping the list in the office in a roll placed in a book rack, as Mr. Adams, the clerk, testified that they were kept in this county. He testified that there had not been a list of delinquent lands posted in the county clerk's office for the last ten years, but the fact that the law has not been complied with does not make it any the less binding.

This law, however, does not require that the list be posted up in the office, but it must be posted in or about the clerk's office. The purpose, of course, of posting the list is to give information or intelligence or knowledge to the landowner as well as the public that the described lands are delinquent.

One of the definitions of "post" given by Webster is: "To publicly announce or advertise by or as by the use of a placard; to affix public notices to; to placard, as a wall; to affix to a post, wall, or other usual place for public notices; to placard."

In the case of *Hilgers* v. *Quinney*, 41 Wis. 62, 8 N. W. 17, the court said, in construing a statute with reference to affidavit as to notices where the statute required them to be posted up in four public places and the affidavit showed: " 'One at the Chilton House, one at the drug store of William Mahoney, one at the Washington House, and one at the office of the county treasurer,' was insufficient, because (1) Four public places in the village of Chilton were not necessarily four public places, so far as the county was concerned; (2) because 'at' is not synonymous with 'in'; and (3) because it did not appear that the posting in the treasurer's office was in a conspicuous place."

The Wisconsin court, in a later case discussing this, said: "Notwithstanding what was said on this subject in the Hilgers case, we do not feel that we ought to hold that this variance alone is fatal. The word 'post,' when used in the present connection, means 'to attach to a post, or wall, or other usual place of fixing public notices; to bring to the notice or attention of the public by affixing to a post, or putting up in some public place." *Allen* v. *Allen,* 114 Wis. 615, 91 N. W. 218.

The variance mentioned by the court in the above case was the use of "at" for "in," and the court held that alone was not fatal.

The Florida court held in construing rules required to be published by the railroad companies: "The meaning of the word 'posted,' as used in rule 4, is that the rules and regulations should be advertised in the form of a poster in the railroad stations; or, in other words, that, printed in bill or placard form, they shall be so attached to something in a conspicuous place in the stations that they can, in the position in which they are placed or without being removed, be read conveniently by the public. This is the usual and ordinary meaning of the term 'posted,' as we see it manifested daily in the posting of notices like those of sale, or against trespass, as well as other kinds. No other construction can be given it with-

out straining its ordinarily understood meaning, nor does any other meaning so well fulfill the purpose and intent of rule 4, that these rules and regulations should be exhibited in the places stated for the information and benefit of the public. We do not think the purpose of the act, that these rules and regulations should be published, is met by the use of a pamphlet.'' *State* v. *Pensacola & A. R. Co.,* 27 Fla. 403, 9 So. 89.

The Texas court stated: ''The copies of the order are required to be 'posted.' The word 'posted' is defined as follows: 'to attach to a sign post or other usual place of affixing public notices; to advertise; as to post a notice.' That such posting was intended to be notice or nothing is so plain, we think, that he who runs may read.'' *Voss* v. *Terrell,* 12 Tex. Civ. App. 439, 34 S. W. 170.

There was no compliance with the statute requiring the list to be posted, and that is a positive duty imposed upon the clerk for the purpose of advising that lands are delinquent.

''I have no doubt whatever that it is essential, in order to give the surrogate jurisdiction of the person of the heirs, that this provision of the statute should be strictly complied with. It is the only process to bring them into court, and without it they are without their day in court. And I think that notice for the full time required by the statute is equally indispensable; that short notice is as no notice.'' *Sheldon* v. *Wright,* 7 Barb. (N. Y.) 39.

In the instant case notice by posting a list was indispensable, and the tax sale without this notice was void. We held that the attaching of the warrant by the clerk was jurisdictional, and that the tax sale without this was void. *Wildman* v. *Enfield,* 174 Ark. 1005, 298 S. W. 196.

Appellant insists that at the time of the passage of this statute in many counties this was the only means the owner and the public had of information as to delinquent lands. And it is contended that in this county it is impracticable to post the list, and that there are so

many forfeitures in this county that posting the lists would serve no useful purpose. However, the law requires the posting of the list, and it is important to the landowner as well as the public that this list should be published as required by law.

We said also in the above case, quoting from a Missouri case: "I hold it is true that, in *ex parte* and summary proceedings, the law must be strictly pursued. In the case of *McClung* v. *Ross* (5 Wheat. 116, 5 L. ed. 46), it was decided by the Supreme Court of the United States, under the laws of Tennessee, where lands are sold by summary proceeding for the payment of taxes, it is essential to the validity of the sale and of the deeds made thereon that every fact necessary to give the court jurisdiction should appear upon the records."

When one's land is forfeited for taxes, and this may happen without the owner's knowledge, it is essential that the statute be complied with. To deprive one of his property by such proceedings, it is necessary to the validity of the sale and of deeds made thereon that the records show that this statute has been complied with.

As we have already said, the statute does not require the clerk to keep them posted in his office, but it does require that the list must be posted in or about his office. He could post it by putting it on the wall in his office, or about his office, or by providing a bulletin board and posting it on it.

We said in a recent case: "It is true that the record also shows that the land was sold in 1922 for the non-payment of taxes for the year 1921, but this sale was void because the records in the county clerk's office do not show that the result of the school election for the school district in which the land was situated was certified as required by § 8955 of C. & M. Digest, and the results of the election certified by the county board of election as required by § 8878 of C. & M. Digest. This rendered the sale void." *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. (2d) 553.

Appellant contends that this is really a suit in eject-ment, and that appellee should have been required to set forth his deeds and evidences of title upon which he relies. Appellee would have been required to do this in a suit in ejectment. But that character of suit is brought only when the party against whom it is brought is in possession. Here the tenants who were put in possession of the property by appellee were still in possession. They were in possession at the time of the forfeiture and sale and were in possession at the time appellant purchased from the State. The fact that the appellant induced these tenants to pay the rent to him did not put him in posses-sion. This was a suit to cancel a deed alleged to be void, and not a suit in ejectment.

We think the undisputed proof shows that the appel-lee was in possession, although the appellant had collected some rents.

In addition to this, appellant himself asked for a decree of the court quieting his title as against the appel-lee. It is contended also by the appellant that the court erred in not allowing him the $30.26 paid to the State and the $27.80 expended in reroofing the house, and that the court should not require him to pay the $97.50 rent. We do not agree with the appellant in these contentions.

As we have already said, the appellant was in pos-session. The sale and deed of appellant were void. Moreover, the law requires notice to be given of the intention to purchase. This notice was not given. There are other questions discussed by learned counsel, but, as we hold that the tax sale and deed are void, it becomes unnecessary to discuss these other questions.

The decree of the chancery court is affirmed.