This is a possessory action by plaintiff, claiming ownership of Lot 88 of the Hotchkiss Subdivision in the City of Shreveport, with improvements thereon, by virtue of duly recorded deed dated June 25, 1940. Plaintiff claims that her possession of the property in question was disturbed by the defendants in the month of December, 1941, and her prayer seeks restoration of full possession of the property, together with attorney's fees in the sum of $250, and reservation of the right to recover all rents collected by defendants from tenants of the property.
Plaintiff's petition contains all necessary allegations made essential to this character of proceeding by Article 49 of the Code of Practice, namely, real and actual possession of the property at the instant of occurrence of the disturbance, quiet and uninterrupted possession under title as owner for more than a year previous to the disturbance; the suffering of a real disturbance in fact, and the bringing of suit within the year in which the disturbance took place.
If plaintiff has successfully established the facts necessary to support the requisite *Page 735 
allegations as above enumerated, there remains no ground for denial of relief. However, after trial below, the district Judge found that plaintiff had failed to substantiate all of the allegations necessary to establish her right to judgment, and, accordingly, gave judgment in favor of the defendants rejecting plaintiff's demands. Upon application, rehearing was granted, and, after trial on rehearing, the original judgment was reinstated and plaintiff's demands again rejected.
The facts pertinent to the issues involved, as established by the record, are as follows:
By deed dated June 25, 1940, Bessie Williams conveyed Lot 88 of the Hotchkiss Subdivision of the City of Shreveport to Margaret Stiles, who, thereafter, and prior to the institution of this suit, became the wife of Jerry Rayson. Despite petitioner's allegation that immediately upon her purchase of the property she took actual physical possession thereof, the facts show that she did not obtain actual possession until July 27, 1940, under a writ of possession, in the execution of which certain occupants of the property, together with their goods and effects, were forcibly and physically evicted therefrom. At the very time that plaintiff was given deed to the property, a suit seeking foreclosure of a mortgage against the property by executory process was pending in the First Judicial District Court of Caddo Parish, Louisiana. Under the order of executory process the sheriff seized and took into his official custody and possession the property involved in this suit, and advertised the same for sale at public auction, but the sale was not held and the writ was returned to the clerk by the sheriff on April 26, 1940. On March 31, 1941, a new writ was issued in the same suit, under which the sheriff seized, advertised and sold at public auction an undivided three-fourths interest in the property, which interest was adjudicated to the plaintiff in that suit, P.T. Beck, Administrator, on May 14, 1941. Beck is one of the defendants in the suit now before this Court. Pursuant to the adjudication, sheriff's deed to the adjudicatee was executed on June 16, 1941. On July 8, 1941, tenants living upon the property were advised by W.B. Massey, also a defendant in this suit, as attorney for the adjudicatee, that they should pay three-fourths of their rent to the said Massey for the account of Beck. It is established that the tenants not only paid this amount to Mr. Massey from and after July 8, 1941, but paid the entire amount of their rent to him with the request that he make settlement of the respective proportions with the parties entitled to the rent, and this fact was communicated to one Ed Green, who was acting as agent of plaintiff. The particular disturbance complained of by plaintiff took place in the month of December, 1941, and is set up in plaintiff's petition in the following words:
"5. That in the month of December, 1941, the said W.B. Massey and Oliver Williams further disturbed petitioner's possession of said property by placing a tenant in one of the houses thereon, and continuing to place tenants in said houses since such date.
"6. That the said P.T. Beck, W.B. Massey and Oliver Williams committed the above mentioned acts under the pretense that P.T. Beck, as Administrator of the Succession of Mary Williams Winn, was the owner of such property."
The defense to this possessory action of plaintiff is based upon the claim by defendants that plaintiff did not have quiet and uninterrupted possession of the property for a period of more than a year prior to disturbance, and, further, that she did not have real and actual possession of the property at the instant when the disturbance occurred, all as required by Article 49 of the Code of Practice. In support of this contention the defendants set up, as disturbance of plaintiff's possession of the property, the seizure, advertisement and sale of an interest in the property by the sheriff, and the interruption of the payment of rent to plaintiff by tenants of the property, and the consequent payment to defendants, both of which alleged disturbances occurred within less than one year after plaintiff was placed in possession of the property. Defendants also urge that at the time of the particular disturbance in December, 1941, which plaintiff has made the basis of her suit, plaintiff was not in the actual corporeal possession of the property.
This contention of the defendants is resisted by plaintiff on the following grounds:
"That the action of the defendant Massey in demanding three-fourths of the rents from plaintiff's tenants did not interfere with plaintiff's possession; *Page 736 
"That a purported sale of a three-fourths interest in the property did not disturb plaintiff's possession; and
"That plaintiff was not deprived of the right to institute this possessory action on account of the fact that for a brief period of time while one party was moved out as plaintiff's tenant and moved back in as defendant's tenant, she was not in corporeal possession of the property."
We cannot agree with the argument that possession is not disturbed by one who so interferes with the administration and management of property as to demand and receive rental monies from tenants upon the property. We cannot imagine a more definite disturbance in fact than such a procedure. Learned counsel for plaintiff cites the cases of Tedford v. Emison, 182 Ark. 1054,34 S.W.2d 214; Glass v. Stewart, La.App. 133 So. 787, and Pittman v. Bourg, 179 La. 66, 153 So. 22, 24, in support of his argument. Careful study of these cases convinces us that they are not pertinent.
The Tedford case turned upon a determination of the question of possession, and the Court held that the fact that the appellant induced the appellee's tenants to pay him rent did not put him (appellant) in possession. This issue is not involved in the case before us, since plaintiff clearly was in possession at the time of the interference with her possession by defendants. The question in this case does not involve possession but disturbance of possession.
The facts in the Glass case did show that the defendants had sold merchantable timber on the land, had visited and walked over the property and made some effort to sell it. However, the holding of the Court was to the effect that until an actual effort was made to cut and remove timber under the defendant's purported sale, there was no real disturbance of possession. Likewise, the other acts simply indicated that defendants claimed to own the property. But, the Court did hold that there was a disturbance of possession on the ground that defendants had interfered with a tenant of the plaintiff, which interference resulted in the tenant's failure to cultivate land. This was held to be a disturbance in fact, and the Court itself stated that such action resulted in "thereby depriving plaintiff of the benefits which he would have received therefrom." [133 So. 790]
Certainly the quotation above, which served as the basis for the Court's conclusion as to the occurrence of a disturbance in fact in the Glass case, is applicable to the case before us. The plaintiff by the action of the defendants was deprived of rent from the property. If this conclusion needed further emphasis, it would be found in plaintiff's petition wherein she prayed: "That petitioner's right to recover all rents collected by defendantsfrom tenants occupying the above described premises be reserved to her." (Italics ours.)
It is true that in the Pittman case the Court held that the mere granting of a trapping or mineral lease did not amount to a disturbance of possession of a third party not privy to such contracts. The reasoning of the Court is plainly set forth in the following statement [179 La. 66, 153 So. 24]: "The actual disturbance, if any, must be accomplished by some actual deed or act that `brings home' to the `actual possessor' the realization that his dominion is being seriously challenged. That is not accomplished by the execution of contracts to which he is a stranger."
In this case we are dealing not with the execution of contracts, but with incidents of actual disturbance, of which incidents this plaintiff had knowledge and certainly should have had realization that they constituted a challenge to her dominion and a disturbance to her possession.
The very definition of a possessory action as set forth in Article 6 of the Code of Practice, in our opinion, is clearly determinative of this point. The article reads as follows: "A possessory action is that by which one claims to be maintained in the possession of an immovable property, or of a right upon or growing out of it, when he has been disturbed; or to be reinstated * * * when he has been divested or evicted."
Certainly the right to receive rents from tenants of property is "a right * * * growing out of" the possession of an immovable property. Consequently, it follows that interference with this right is definitely a disturbance of possession.
While we believe that our conclusion as to the existence of a disturbance in fact on the point above described, which accords with the finding of the learned Judge of the District Court, definitely disposes of this case, we are, nevertheless, constrained, in *Page 737 
respect to the time and effort devoted by appellant's counsel, to pass upon the other questions raised.
It is true, as argued on plaintiff's behalf, that it has been held that a seizing officer cannot take corporeal possession of an undivided interest in land. Nonetheless, in consideration of the holding in White v. Sheriff, 32 La.Ann. 130, it is evident that a disturbance of possession takes place by the mere seizure and advertisement of the property for sale at public auction.
The syllabus of the above-cited case, which correctly states the conclusion of the Court, reads as follows: "The seizure and advertising of property for sale, by the sheriff, is such a disturbance as authorizes the possessory action by a third person holding personally or by his tenants, although the sheriff did not actually dispossess them."
Under this theory, it is obvious that the seizure of an undivided three-fourths interest in the property possessed by this plaintiff, and the subsequent advertisement of sale thereof at public auction, constituted a very real disturbance in fact of plaintiff's possession. The existence of this disturbance is made more evident by the fact that plaintiff's agent was cognizant of these proceedings, and, as a matter of fact, was present at the time of the sheriff's sale.
We are not impressed with defendants' argument that plaintiff is deprived of the right to bring this action because for a very brief space of time she was not in the actual corporeal possession of the property, either through herself or her tenants. Certainly, plaintiff never at any time indicated an intention to relinquish possession, and we are not inclined to sustain the claim that an ejectment of her tenant by these defendants, followed by an actual vacancy of the property of a few hours duration, after which the same tenant was moved into the property, constituted such interruption of plaintiff's possession as to deprive her of her rights under a possessory action.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost. *Page 783