PRICE *v.* WILLIAMS.

Opinion delivered February 18, 1929.

*J. R. Linder* and *Brundidge & Neelly,* for appellant. *John E. Miller,* for appellee.

MEHAFFY, J.   On October 25, 1923, A. L. Bland was indebted to W. C. Cross in the sum of $600, and on that day executed his promissory note for said sum, and gave a deed of trust upon certain lands in White County to secure the payment of said debt.   After Bland had paid a portion of the debt, W. C. Cross transferred and assigned the note and deed of trust to John P. Williams, on the 31st day of August, 1925.   On January 14, 1926, A. L. Bland was indebted to John P. Williams in the sum of $200, and executed his note for said sum, which became due on July 14, 1926.   The following is a copy of the note given by Bland to Williams:

"$200                    Beebe, Ark., Jan. 14, 1926.

"On or before the 14th day of July, 1926, for value received, I or we agree to pay to J. P. Williams, or order, two hundred dollars, with interest at 10 per cent. per annum from date until paid, negotiable and payable at Beebe, Arkansas, it being for money advanced on land, to-wit: S½, NE pt. SW-NW 17-5-16 acres, more or less, this amount to be added to the original mortgage to W. C. Cross transferred to J. P. Williams and this day delivered to the maker of this note, with the understanding and agreement by and between the maker of this note and J. P. Williams that the title of above described property is and shall remain, with full power of disposition without notice, in such manner as he may see fit, in said J. P. Williams, until all indebtedness on above mentioned stock is paid for in full.

His
Lat  X  Bland
Mark

"Due July 14, 1926.

"Witness:  J. E. Turnage.

(Indorsed) "Filed May 29, 1928. Ben D. Smith, clerk."

Bland having failed to pay Williams the Cross debt and also the $200, suit was brought by Williams to foreclose the deed of trust on the property. The deed of trust ran to W. C. Cross and to his heirs and assigns.   After

the assignment of the note and deed of trust to Williams, and after Bland had executed the note to Williams above set out, on the 13th day of November, 1926, A. L. Bland conveyed the land described in the deed of trust to G. W. Price.

Bland, in his answer, admitted the execution of the note to Cross, and admitted that there was a balance due, and also admitted that he was indebted to Williams in a small amount unsecured. He further alleged that he had conveyed the property to Price, and that Price had assumed all indebtedness due to Cross from Bland.

Price filed an intervention, admitting that he bought the lands from Bland, and agreed that he was to pay the balance due to W. C. Cross. He alleged that he had no notice that J. P. Williams was claiming a lien on the land for the amount due him, until the filing of the suit. He alleged that he is ready and willing to pay the Cross note.

Plaintiffs filed a reply to Price's intervention, denying the allegations in said intervention.

The evidence was undisputed about the original indebtedness from Bland to Cross, and about the note and mortgage, and about the balance due on said mortgage. But Bland testified that he did not agree for Williams to have a lien for the $200 note. He also testified that he only gave a note for $50, that he borrowed $50 from Williams and gave his note. However, the testimony of Williams and Turnage, justice of the peace, who wrote the note and witnessed Bland's mark, testified that he executed the note for the $200, and the testimony shows that the Cross mortgage should cover this indebtedness as well as the original indebtedness to Cross.

There is some conflict in the testimony, but the chancellor's finding is sustained by the preponderance of the evidence, and it is unnecessary to set out the testimony in detail.

The deed of trust was written on a blank used by the Union Bank & Trust Company, and, while the mortgage was made by Bland to Cross, the name of Union Bank & Trust Company was left in by mistake, so that the mort-

gage read, as to indebtedness other than the note: "Also as security for the payment of any other liability or liabilities of the grantor already or hereafter contracted to the said Union Bank & Trust Company." Cross being the mortgagee, of course it was understood that this meant indebtedness to him, and, the printed form being used, the parties overlooked the name of the bank being printed in blank, and neglected to strike it out and insert the name of Cross.

The deed of trust did not properly describe the land, and suit was not only to collect the debt and foreclose the mortgage, but also to reform the mortgage or deed of trust before foreclosure. The chancery court entered a decree reforming the mortgage and ordering the land sold to pay the balance of the original debt due Cross and also the debt due Williams.

The appellant's first contention is that the description in the deed of trust from Bland to Cross does not contain a description of the land in controversy, and does not contain such a description as from it the land could be located. In the first place, there was a sufficient description of the land to put any person on notice and enable them to locate the land. Besides that, both Bland and Price knew what land it was, and each of them knew that it was the only land that Bland owned in White County. But, in addition to this, this question was not raised in the lower court, and it cannot be raised here for the first time. The complaint asked for a reformation of the deed, and neither Bland nor Price made any contention or suggestion about the improper description of the land. They admitted the indebtedness, and alleged a willingness to pay the original debt to Cross, and Bland also admitted the other indebtedness. Not having raised the question as to the description in the lower court, they cannot raise it here.

Appellant's second contention is that Price would only be liable for the amount of $240.03, and states that Price had no notice, either actual or constructive, of any indebtedness due by Bland to Williams, and that for that

reason the land could not be sold to pay this debt to Williams. Price, however, did have record notice of the fact that the note and mortgage had been assigned to Williams by Cross, and he admits that he knew about it, and that Bland told him about it. Therefore, when Price bought the property he bought it with a knowledge that the original mortgage was made to Cross and his assigns, and with the knowledge that the note and mortgage were assigned to Williams.

As a general rule, the assignee of a mortgage or deed of trust has all the rights thereunder that an assignor has. And in this case Williams had all the rights that Cross had; but the appellant says that it is their contention that the mortgage does not secure the indebtedness evidenced by the $200 note given by Bland to Williams, and that Price, being an innocent purchaser for value, took the land free from any liens that Williams might have. They say, however, that Williams could doubtless hold the land for any indebtedness due at the time of the transfer of the Cross mortgage, but that he could not impress a lien upon the land against a third party simply by executing a new note and providing in it that the original mortgage should stand as a mortgage for the new note. It will therefore be seen that there is no controversy about the original indebtedness to Cross, but it is contended that the debt to Williams is not secured by the mortgage; that there is no lien on the land as against Price for the $200 note.

The mortgagor and holder of the mortgage had a right to make any contract or agreement that they wished to make. Neither is a trustee for the other, and they may validly make any contracts or arrangements with each other in regard to the subject of the mortgage or the indebtedness between them, and such agreements are treated as any other contracts would be. 41 C. J. 602.

There is no dispute about the fact that Bland and Williams made this contract. That is, there is no dispute about Williams lending Bland $50 and Bland executing his note. Bland, it is true, swears that he only signed a

$50 note, and did not agree for it to be a lien. He is, however, contradicted by Williams and Turnage, and the note itself shows that the agreement was that the $200 should be covered by the original mortgage and should be a lien on the land. Unquestionably Bland and Williams had a right to make this contract, but it is contended that it is not binding so far as Price is concerned. We think a complete answer to this is that the mortgage itself showed that it provided for future advances, and provided that the future advances should be secured by the mortgage. And Williams, the assignee, having all the rights that Cross had, he simply took the place of Cross in the mortgage, and advances by him were secured by the mortgage just as advances made by Cross would have been secured by the mortgage.

"Now, as to the $1,500 advanced by the assignee of the mortgage to the bankrupt on the 4th of December, 1920, there is nothing in the evidence to indicate that this money was advanced under the cover of this mortgage for the purpose of preferring any creditors over another. Of course, a mortgage cannot be used as a vehicle by which to prefer a creditor. Money loaned by mortgagee, who knows that the money is to be used for the purpose of preferring creditors, would not be protected as a mortgage lien claim under the Bankruptcy Act. However, with reference to the $1,500, it is not disclosed that there was any intention on the part of the bankrupt or the party loaning the money to use the proceeds of this loan for the purpose of creating a preference. The most that is said about the uses of the money was that it was to pay bank interest for the purpose of keeping the Great Lakes Lumber Company in condition to go along as a going concern, and this would not be evidence from which to find that the mortgage was to be used as a vehicle for creating a preference. We are of the opinion that the referee was right in holding that this sum of $1,500 was an advancement under the mortgage for a present consideration, and therefore valid. The exceptants in this case urge that the clause in relation to future

advances contained in the mortgage was a personal one to the mortgagee, and that it did not apply to the assignees of the mortgage. The mortgage, however, ran to the mortgagees, their attorneys, executors, administrators, and assigns, and we think the assignees of the mortgage are within the provision with reference to advancement and are entitled to protection for advances which they made under the mortgage." *In Re Great Lakes Lumber Co.*, 8 Fed. (2d) 96.

The mortgage in the instant case ran to the assignees, and therefore the assignees of the mortgage are within the provisions with reference to advancement, and are entitled to protection for advances which they made under the mortgage. Transactions whereby assignees of mortgages make future advances are frequently made. It is a general custom in this country for planters and farmers and others to execute notes and mortgages for money and future advances. If the mortgagee should sell out his business and assign the notes and mortgages, the assignees could continue to carry out the contract, make future advances, and be secured by the mortgage exactly as the original mortgagee would be.

It has been repeatedly held that an assignee takes a note secured by mortgage exempt from any equities residing in a third person to which it might be subject in the hands of the assignor. 41 C. J. 695; Jones on Mortgages, vol. 2, page 454-5.

There is no contention that the mortgage would not have secured any debt due from Bland to Cross or any advances made by Cross, and the weight of authority is to the effect that the assignee occupies the same position with reference to the mortgage and with reference to future advances that the assignor did; and that a third person cannot defeat the right of either the mortgagor or his assignee by purchasing the mortgaged property. The mortgagor, of course, has the right to sell or convey the mortgaged property. But by doing so he not only does not relieve himself from liability, but he does not affect the security or the mortgagee's right to foreclosure.

A mortgage on land is not extinguished nor its lien divested by the sale of the premises to the purchaser who has notice of the mortgage, as Price did in this case. But whatever title he gets is subject to the mortgage, and is no better and no stronger than that of his vendor. 41 C. J. 712.

The purchaser of land acquires the title, rights and equities of his grantor, and no more. And in the instant case Price is in no better position than Bland himself would have been. The same rule that binds Bland binds his privies, his purchasers.

Appellant calls attention to numerous authorities holding, in effect, that each instrument must be interpreted according to its particular language, and that, when a mortgage is given to secure future advances, it means advances furnished within a certain time. But there is no limitation in the mortgage in this case. It provides that the mortgage shall be security for the payment of any other liability or liabilities of the grantor, already or hereafter contracted, until the satisfaction of the mortgage. Construing this part of the mortgage according to the rules suggested or announced in the authorities cited, the mortgage necessarily, by its very language, includes liabilities already created or any that may be created hereafter, until the satisfaction of the mortgage. And of course there is no contention that the mortgage was satisfied.

Our conclusion is that the assignee has all the rights and equities that the mortgagee did, and that the mortgage secures future advances made by the assignee the same as if made by the original mortgagee, and that Price occupies no better position than his vendee, Bland.

The decree of the chancery court is therefore affirmed.

Smith and Kirby, JJ., dissent.