RWR PROPERTIES, INC. *v.* MID-STATE TRUST VIII

CA 07-992                                                    282 S.W.3d 297

Court of Appeals of Arkansas
Opinion delivered April 9, 2008

*Stephen E. Whitwell*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Harry A. Light*, for appellee.

D.P. MARSHALL JR., Judge. The parties dispute who owns some real property — RWR Properties, Inc., claiming it through a tax deed from the Commissioner of State Lands and Mid-State Trust VIII claiming it through a Commissioner's deed from a foreclosure sale. RWR and Mid-State agreed on the material facts. And on those facts, the circuit court entered summary judgment for Mid-State and voided RWR's tax deed. RWR asks us to reverse this judgment, arguing that (for various reasons) Mid-State may not get the benefit of the legal ground on which the circuit court ruled: the undisputed lack of notice by the Commissioner of State Lands to a prior mortgagee that the land was about to be sold to pay the delinquent taxes and could be redeemed. We review *de novo. Craven v. Fulton Sanitation Servs., Inc.*, 361 Ark. 390, 391-92, 206 S.W.3d 842, 843 (2005).

The record presents a thicket of transactions, which we summarize to focus the legal issues. Mr. and Mrs. George Thomas borrowed money to buy a home and two lots in Jefferson County. They gave a mortgage on the realty to Jim Walter Homes, Inc. to secure their note. Their mortgage was assigned many times. The Thomases did not pay their real estate taxes on lot 2. In October 2002, that lot was certified to the Commissioner of State Lands pursuant to Ark. Code Ann. § 26-37-101 (Repl. 1997) as tax-delinquent land. At that time, First Union National Bank, Trustee, was the mortgage holder of record.

The Thomases later failed to pay their note on the property. When the Thomases defaulted, Mid-State Trust VIII and Walter Mortgage Company owned the mortgage. They began foreclosure proceedings. Walter Mortgage bought the home and lots at the foreclosure sale for approximately $64,000.00, received a Commissioner's deed, and later sold the property. Walter Mortgage took a mortgage from the buyer, and after having been assigned several times, that mortgage is now held by the appellee Mid-State.

Almost a year after the foreclosure proceedings ended, the Commissioner of State Lands sold lot 2 to RWR for about $6,000.00, which covered the back taxes, penalties, interest, and fees. Pursuant to Ark. Code Ann. § 26-37-301 (Repl. 1997), the Commissioner gave notice of the sale and the right to redeem to Mr. and Mrs. Thomas, who had owned the property when it was certified as tax delinquent. The governing statute also made First Union an interested party entitled to notice because First Union had held a recorded interest in the property at the time of certification. Ark. Code Ann. §§ 26-37-301(a)(1) & (2) and (c). The Commissioner, however, did not notify First Union.

■ The circuit court ruled correctly on the agreed, essential facts. The Commissioner of State Lands must comply strictly with the statute's notice requirements. *Sanders v. Ryles*, 318 Ark. 418, 423, 885 S.W.2d 888, 891 (1994). Beyond the statute, the Due Process Clause protects a mortgagee's right to notice of a tax sale so that the mortgagee has the opportunity to protect its interest in the real property. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798-800 (1983). Here, the Commissioner acknowledged and the parties agreed that First Union received no notice of the sale. The circuit court therefore correctly voided the Commissioner's limited warranty deed to RWR.

■ RWR argues that, for several independent reasons, the foreclosure in Mid-State's chain of title requires reversal. We are not persuaded by any of RWR's points. Contrary to RWR's initial argument, First Union was not a necessary party under Rule of Civil Procedure 19. As the mortgage holder at the time of certification, First Union had the right to notice of the tax sale but that right was not personal. The statute makes the right a function of the interest in realty; and we hold that the right passed — along with all First Union's other rights in lot 2 — to its assignee when

First Union assigned the mortgage and then passed to the successor assignees. *Price v. Williams*, 179 Ark. 12, 16-18, 13 S.W.2d 822, 823-24 (1929).

This brings us to RWR's second argument, which is the core of its position. RWR argues that Mid-State lacks standing to pursue the no-notice argument because Mid-State holds title through the foreclosure and resulting deed. RWR says that this must be so for "the original mortgage and any claim arising from it were terminated by the foreclosure proceeding." On this theory, the deed resulting from the foreclosure began a new and independent chain of title.

RWR's argument, however, misunderstands what happens when the circuit court forecloses a mortgage and sells real estate to pay the related debt. The foreclosure and sale do not create a new chain of title that has no connection whatsoever with prior interests in the property. Instead, the buyer receives what the court has to sell. Walter Mortgage thus bought the Thomases' interest and the foreclosing mortgagees' interest. The original mortgage was indeed foreclosed, but that foreclosure did not destroy First Union's right to notice of the tax sale. That right passed — along with all the rights of the Thomases and the foreclosing mortgagees — to the buyer at the judicial sale, Mid-State's predecessor in title.

In the words of an older case, the governing legal principle is that "the purchaser at a mortgage foreclosure sale steps into the shoes of the mortgagee in the mortgage foreclosed, and is entitled to all the rights such mortgagee had under the mortgage." *Robb v. Hoffman*, 178 Ark. 1172, 1176, 14 S.W.2d 222, 224 (1929). The principle governs whether, as in *Robb*, it subjects the purchaser's interest to a prior mortgage or, as in this case, it vests in the purchaser a right of a predecessor mortgagee to notice before a tax sale. In the phraseology of RWR's argument, Mid-State had standing to assert the right of its predecessor in title, First Union, to notice of the tax sale.

As Mid-State notes, its challenge to RWR's tax deed was essentially a suit to redeem. *McAllister v. Wright*, 197 Ark. 1156, 1160, 127 S.W.2d 645, 648 (1939). Either the current owner, a Ms. Hicks, or the current mortgagee, Mid-State, had a sufficient interest in lot 2 to pursue redemption. *Woodward v. Campbell*, 39 Ark. 580, 584 (1882). And the right to challenge the tax sale based on the Commissioner of State Lands's failure to give notice to First

Union passed to Hicks and Mid-State when they acquired their interest in the property through the buyer at the foreclosure sale.

█ RWR argues, finally, that Mid-State is collaterally estopped to assert the no-notice claims. Citing the general law about issue preclusion, RWR points out that the Commissioner of State Lands was not a party to the foreclosure action, says that ownership was litigated there and the notice issue could have been litigated but was not, and concludes that Mid-State is barred from asserting the notice issue now. This argument confuses claim preclusion and issue preclusion; the former bars relitigation of issues that could have been raised but were not, while the latter bars issues actually raised and decided. *E.g., John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 635-36, 855 S.W.2d 941, 943 (1993). The elements of collateral estoppel are simply not present in this record. The stated premise of RWR's preclusion argument is that the notice issue was not litigated in the foreclosure. That premise means that there can be no collateral estoppel on that issue in this case.

Affirmed.

HEFFLEY and BAKER, JJ., agree.