WOODWARD V. CAMPBELL, COMMISSIONER, ETC.

1. AGENCY:   *By what acts of officers the State is bound.*

The State is liable only to the extent of the power actually given to its officers, and not to the extent of their apparent authority; and all who deal with a public agent must, at their peril, inquire into his real power to bind his principal.

2. LEVEE BONDS:   *No payment for State lands.*

Payment for land of the State in levee bonds is no payment, and the purchaser acquires no rights thereby.

3. TAX SALES:   *Redemption:   Who entitled to.*

Almost any right, either in law or equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem the land from tax sale.   Certainly a purchaser by executory contract can redeem.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Henderson & Carruth,* for appellants:

Internal improvement lands are subject to taxatior after entry.   (*Section 3925 Gantt's Digest.*)   The entry still stands, and the forfeitures are presumed to be valid.   The assertion of the right to tax is an admission that the title is out

of the State. The certificate demanded was absolutely necessary to enable appellants to redeem. They had no remedy except by mandamus. It was the "plain legal duty" of the Commissioner to issue the certificate.

The certificates of entry were assignable. *Section 3926 Gantt's Digest.*

The Treasurer was acting in the discharge of his legal duties and within the scope of his authority. The receipt was an acknowledgment of payment in full for the lands *in money;* his act was the act of the State, and the debt was discharged. *Benjamin on Sales, 546; Story on Agency, secs. 57–8–9, 60; 6 Barn. & Cress., 175; 73 N. Y., 315; 4 Mo. App., 525; 34 Ohio St., 142; 5 Col., 578; 1 Wy. Ter., 51.*

Receipts under some circumstances become conclusive and estop parties (*1 Woolw., 96; Whart. on Ev., vol. 2, 1006*); and can not be contradicted by parol. *29 Penn. St., 319; Bigelow on Estoppel, 423–4–5–6–7.*

The Treasurer was authorized to receive levee bonds, etc. (*Sec. 4044 Gantt's Digest.*) Even if the action of the Treasurer was improper, he was liable on his bond. The loss should not fall on innocent third parties.

The State was concluded by the receipts and the acts of the Treasurer, her agent, etc. She is estopped. See *3 Pickering, 224; 4 Pet., 1; 17 Wall., 32; 4 Binn, 231; 7 Col., 527; 49 Mo., 216; Bigelow on Estoppel, 246.*

The act had not then been declared not constitutionally passed.

*Moore, Attorney-General,* for appellee:

The *levee bonds* were held void in *33 Ark., 17,* and the payment was a nullity. The purchase-money being unpaid, the lands still belong to the State. *Sec. 3983 Gantt's Digest.*

The lands were subject to taxation (*sec. 5049 Gantt's Digest*) ; but should not have been sold, but *continued on the*

*tax-books.* They could not be declared *forfeited,* and were not subject to redemption. *Ib.*

If the contract had been executed and patents issued before the decision in *33 Ark., 17,* the State might have been estopped, but the contract was *executory,* and there is no obligation on the State, nor right for the Commissioner to issue a patent or certify for redemption, as has been held in regard to *Confederate money,* etc.

SMITH, J. In 1873 Charles W. Tankersley purchased from the State several thousand acres of internal improvement lands, and made his note for the purchase-price. He afterwards transferred his certificates of purchase to T. B. Mills & Co., and they, on the third of July, 1875, paid to the Treasurer of the State, in levee bonds and coupons, the principal and interest of said notes. The lands were assessed for taxation in the years 1875 and 1876, and, the taxes not having been paid, were declared forfeited to the State. The over-due tax law of March 12, 1881, amended March 22, 1881, gave to the owners of forfeited lands the privilege of redemption within ninety days after its passage. On the sixteenth of June, 1881, the appellants, then the holders of the certificates of purchase issued to Tankersley, applied to the Commissioner of State Lands to certify to the Treasurer the amount of taxes, penalties and costs due upon these lands, to the end that they might redeem. This certificate the Commissioner refused to grant. Thereupon they filed their petition for a writ of mandamus to compel him to certify the amount required to redeem, and to issue to them a patent deed for the lands.

The defenses were that the alleged payment in levee bonds was a nullity, and that the lands, being still the property of the State, were erroneously reported as forfeited for taxes.

The act under which the levee bonds were issued, was adjudged in *Smithee v. Garth, 33 Ark., 16,* not to have been passed in accordance with constitutional requirements. And although that decision had not been· rendered when the Treasurer received some of these bonds and coupons in discharge of Tankersley's obligations, yet the act of December 14, 1874, distinctly prohibited him from accepting such funds. The State is liable only to the extent of the power actually given to its officers, and not to the extent of their apparent authority. And all who deal with a public agent must at their peril inquire into his real power to bind his principal. *Story on Agency, sec. 307 a,* and cases cited; *The Floyd Acceptances, 7 Wall., 666.*

1. AGENCY: Official acts, by what, State bound.

The appellant's rights are, then, no other nor greater than if such supposed payment had never been made. The lands are still liable for the debts incurred in their purchase. Receipts are only *prima facie* evidence of payment, open to explanation and contradiction. And this receipt shows on its face that it was paid in an unlawful medium.

2. LEVEE BONDS: No payment for State lands

But the appellants were the equitable owners of the lands; that is, they had the right to go forward and pay the lands out. No question is made but that the sale to Tankersley was authorized by law. The certificates of purchase he received are expressly made assignable. *Gantt's Digest, sec. 3926.*

. The land was subject to taxation after the date of its entry. *Ib., sec. 3925.*

While it might have been more regular not to offer these lands for sale for taxes, since a sale would not have carried the interest of the State, but only that of Tankersley or his assignees, yet, practically, the clerks and collectors can not be acquainted with the precise condition of every parcel of land that the State has sold and whether

3. TAX SALES: Redemption, who entitled to.

it has been in fact paid for or not.   The legal effect of the forfeiture was the same as if the lands had been returned delinquent, and continued on the tax-books with the taxes of succeeding years added as they accrued.   *Gantt's Digest,* secs. *3983–4, 5049; Harrison v. Williams, Ante, 315.*

Statutes providing for redemption from tax sales always receive a liberal construction.   Almost any right, either at law or in equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem.   Certainly a party claiming the land under an executory contract to purchase, it, is the owner within the meaning of the act.   *Cooley on Taxation, 366; Rice v. Nelson, 27 Iowa, 148; Rogers v. Rutter, 11 Gray, 410.*

The petitioners are entitled to redeem from the forfeiture, but not to a deed for the lands until they shall have paid the purchase-price.

Reversed and remanded with directions to grant the writ prayed for, requiring the Commissioner to certify the amount required for redemption.