HIRSCH AND SCHUMAN v. DABBS AND MIVELAZ.

4-5373 and 5-5401        126 S. W. 2d. 116

Opinion delivered March 6, 1939.

*George W. Dodd,* for appellants.

*Geo. F. Youmans* and *Roy Gean,* for appellees.

SMITH, J. The state of Arkansas brought suit in the Sebastian chancery court, Fort Smith District, for the confirmation of title to numerous town lots and tracts of land which had been forfeited and certified to the state for the nonpayment of taxes. The suit was begun under authority conferred by act 119 of the Acts of 1935, p. 318. Section 6 of this act reads as follows:

"Section 6. Any person, firm, corporation, or improvement district claiming any interest in any tract or parcel of land adverse to the state shall have the right to be made a party to the suit, and, if made a party, the claims of any such person, firm, corporation, or improvement district shall be adjudicated, If any person, firm, corporation or improvement district sets up the defense that the sale to the state was void for any cause, such person, firm, corporation or improvement district shall tender to the clerk of the court the amount of taxes, penalty and costs for which the land was forfeited to the state, plus the amount which would have accrued as taxes thereon had the land remained on the tax books at the valuation at which it was assessed immediately prior to the forfeiture, provided, that there shall be credited on the amount due, any taxes that may have been paid on the land after it was forfeited to the state.

"In case any person, firm, corporation or improvement district so made a party defendant to the proceed-

ing as hereinabove provided, shall establish a valid defense, a decree of the court shall be rendered in favor of such defendant, with respect to the tract so affected and shall quiet the title thereto in such defendant, free from any claim of the state therein, upon payment by said defendant of the total amount of taxes, penalty and costs as hereinabove mentioned.''

Two lots in the city of Fort Smith, which are the subject-matter of this litigation, were involved in this confirmation suit, it being alleged that said lots had been sold to the state in 1934 for the non-payment of the taxes due thereon for the year 1933. Appellees, respective owners of the two lots here in question, filed an intervention, pursuant to the authority of § 6 of this act 119, above copied, and alleged that the sale of their lots was void for numerous reasons. They made the tender required by § 6, and the sum tendered was deposited with the clerk of the court, subject to the order of the court, and they prayed that their title be quieted.

Appellant J. B. Hirsch had purchased both lots from the state, and received a separate deed for each lot, and it was prayed that Hirsch be made a party defendant. This was done, and Hirsch filed an answer to each intervention, denying the invalidity of the forfeiture and sale to the state. The same issues are involved, and arise out of facts identical in each intervention, and we will discuss the cases as if there were only one case.

The court held the sale of the lots void for various reasons and granted the interveners the relief prayed, and from that decree is this appeal.

The court made numerous findings of fact, in each of which it was declared that the sale was void for the reasons there stated.

One of the findings was that the sale was void for the reason that the county clerk had not posted up in or about his office the delinquent list of lands for one year. This requirement appears in § 10084, Crawford & Moses' Digest, and it had been held that failure to comply with it invalidated the tax sale. *Tedford* v. *Emison*, 182 Ark. 1054, 34 S. W. 2d 214.

But when the sale here in question was made, this requirement was not in effect. Section 10084, Crawford & Moses' Digest, was amended by act 250 of the acts of 1933. This amendatory act re-enacted § 10084, Crawford & Moses' Digest, by omitting the last sentence thereof, which reads as follows: "He (the county clerk) shall also keep posted up in or about his office such delinquent list for one year." The effect of this amendment of § 10084, Crawford & Moses' Digest, by § 5 of act 250 was to dispense with this requirement, and as that duty is not now imposed and was not required when the tax sale was had, non-compliance therewith does not now operate, and has not, since the passage of act 250, operated to invalidate tax sales on that account.

Act 250 of the acts of 1933 was not published in the printed acts of 1933. Under that number appears the notation: "Held unconstitutional by the Supreme Court." This was an error on the part of the secretary of state in omitting to include act 250 in the acts of 1933 as published.

This act 250 contains provisions fixing the fees of various county officers, and that portion of the act was held unconstitutional in the case of *Smith* v. *Cole,* and *Brown* v. *Pennix,* 187 Ark. 471, 61 S. W. 2d 55, for the reason that it violated the inhibition of amendment No. 14 to the constitution against passing local laws, but it was said in that case that "the fact that §§ 5 and 6 of act 250 of 1933 are general in their nature and valid will not validate local and special provisions in § 2 of the same act." See, also, *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. 2d 476.

Sections 5 and 6 of this act 250 amended § § 10084 and 10085, Crawford & Moses' Digest, respectively, and that portion of the act was upheld in the case of *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909, it being the opinion of the court that these § § 5 and 6 were separable from the remainder of the act, which fixed fees and salaries. Section 5 of act 250 was, therefore, valid legislation, as was also § 6, and, as we have stated, the effect of § 5 was to eliminate the requirement contained in § 10084, Craw-

ford & Moses' Digest that the county clerk post and keep posted up in and about his office such delinquent list for one year.

Other findings of the court holding that the tax sale was invalid are to the following effect: No proper certificate of delinquency was filed by the collector with the county clerk; nor was the certificate which was filed, filed within the time required by law; nor was the list of delinquent lands entered upon the record within the time and manner required by law. The court further found that the clerk had failed to attach to the tax books the warrant required by law authorizing and directing the collector to make collection of the taxes entered upon the tax books.

There was read into the record a certificate as follows:

"State of Arkansas, County of Sebastian. I, Earl Dawson, county clerk within and for the county and state aforesaid, do hereby certify that a notice of the filing of the foregoing list of real estate returned delinquent for the year 1933 was published in the Southwest-Times Record Company, a newspaper of said county and district. The first notice of the delinquent land sale was published on 9th day of November, 1934, and the second notice on the 16th day of November, 1934, as the law requires.

"In testimony whereof, I have hereunto set my hand and affixed the seal of said office this 22nd day of November, 1934."

Following this reading the clerk was asked: "Q. Is the notice actually set out in that record" and he answered: "A. No, sir."

It is uncertain to what document or record this question and answer related. There does not appear to have been any other record of the "List of Real Estate Returned Delinquent for the Year 1933." If this delinquent list had not been entered upon a permanent record, usually referred to as the record of lands returned delinquent, the sale was void for that reason. If this was the record, and not merely the delinquent list filed

by the collector with the county clerk, the entry therein was not sufficient, for the reason that the record was not made until November 22, 1934, which was subsequent to the date of sale, the sale having been made November 19, 1934.

Section 10082, Crawford & Moses' Digest, required the collector to file the list of delinquent lands, duly verified, with the county clerk by the second Monday in May, and it was held essential to the validity of the sale of these lands that the list be filed on or before that date. *Boyd* v. *Gardner,* 84 Ark. 567, 106 S. W. 942; *Ramsey* v. *Long Bell Lumber Co.,* 195 Ark. 528, 112 S. W. 2d 951. The county clerk was required to compare this delinquent list with the tax book and the record of tax receipts. Section 10084 required the county clerk to publish the list of delinquent lands as corrected, and by § 10085 it was required that ''The clerk of the county court shall record said list and notice in a book to be kept by him for the purpose,'' and shall certify at the foot of the record the newspaper in which the list was published, and the date of publication, and for what length of time the same was published before the second Monday in June next ensuing. These statutes were construed as requiring that not only should this record be made, but that it must be made before the day of sale, and that if not made, or not made until after the day of sale, the sale was invalidated. *Magness* v. *Harris,* 80 Ark. 583, 98 S. W. 362.

The insistence is, not that these requirements were met, but, that they have been dispensed with by act 250 of the 1933 regular session of the General Assembly, and by act 16 passed at the special session thereof (Acts Special Session 1933, page 61), and that it is not now required that the clerk shall certify anything more than to state in what newspaper the notice of delinquent lands was published, and that it is not required that this certificate shall be made before the sale.

It becomes necessary, therefore, to consider in what respect the law as it appears in Crawford & Moses' Di-

gest, *supra,* has been changed by subsequent legislation, as applied to the record in this case.

As we have said, § 5 of act 250 amended § 10084, Crawford & Moses' Digest, by eliminating the requirement that the delinquent list as published shall be posted in the clerk's office.

Section 6 of act 250 amends § 10085, Crawford & Moses' Digest. This amendatory section is not found in the published acts of 1933, but is set out in the opinion in the case of *Union Bank & Trust Co.* v. *Horne,* 195 Ark. 481, 113 S. W. 2d 1091, except, as there published, there is omitted the last paragraph of that section which reads as follows: "The list of delinquent lands recorded as provided in § 5 hereof shall have attached thereto, by the county clerk, a certificate at the foot of said record, stating in what newspaper said notice of delinquent land sale was published, and the dates of publication, and such record, so certified, shall be evidence of the facts in said list and certificate contained."

The portion of this amendatory § 6, copied in the opinion in the case of *Union Bank & Trust Co.* v. *Horne,* *supra,* provides that "There shall be published once weekly for two weeks between the second Monday in May and the second Monday in June, in each year, . . . ., a notice to the effect that the delinquent lands, tracts, lots or parts of lots so entered in said delinquent land book will be sold, . . . . Said notice of sale of delinquent real estate for taxes shall occupy a space of not more than six inches double column in each publication . . ."

This amendatory § 6 then provides that "Said notice shall be in substance as follows: 'NOTICE OF DELINQUENT TAX SALE. The lands and lots and parts of lots returned delinquent in ......................... county for the year 19........, together with the taxes and penalties charged thereon agreeable to law, are contained and described in a list or record on file in the office of the clerk of the county court; . . .'" Thereafter follows the last paragraph of the amendatory § 6, copied above, which

was omitted from the opinion in the case of *Union Bank & Trust Co.* v. *Horne, supra.*

We perceive, in this amendatory legislation, no intention to dispense with the requirement that a permanent record be made and kept of lands returned delinquent, nor as to the time of making such record, that is, prior to the sale.

The effect of this amendatory § 6 is to make such a record more important than ever; indeed, under this amendatory section, such a record becomes indispensable. This amendatory section dispenses with the necessity of publishing the list and description of the delinquent lands. A six-inch, double column notice advises that delinquent lands will be sold, but does not describe the land to be sold. That information cannot be obtained from the published notice, but can only be had by examining the permanent record in which the delinquent list of lands has been copied. If the continued keeping of that record is not required, then there was no permanent record where anyone might look to ascertain what lands were returned delinquent. The notice for which the act provides refers to the record where the delinquent lands are described, and the last paragraph of this § 6 requires that a certificate be made at the foot of that record stating in what newspaper the notice was published.

Act 16 of the Special Session of 1933 changes the time for collecting taxes, and permits their payment in installments, and amends act 250 to conform to this change in time for payment and for certifying delinquency in payment of taxes. Later legislation affecting time of payment need not be here considered.

Section 5 of this act 16 amends § 6 of act 250 by providing the time and manner of publication of "Notice of delinquent land sale," and provision is made for the publication of "A notice to the effect that the delinquent lands, tracts, lots or parts of lots so entered in said delinquent land book will be sold . . ." But this act 16 also dispenses with the necessity of describing the lands to be sold by providing that "Said notice of sale of delinquent real estate for taxes shall occupy a space of not

more than six inches, double column in each publication."
Then follows the form of this notice, which, without describing the lands to be sold, recites that these lands "are contained and described in a list or record on file in the office of the clerk of the county court; . . ." Thereafter follows a paragraph identical with the last paragraph of § 6 of act 250, above copied.

We conclude, therefore, that the requirement of § 10085, Crawford & Moses' Digest, that the clerk of the county court shall record said list and notice in a book to be kept by him for that purpose, has not been dispensed with, and as that requirement was not complied with, the tax sale was void for that reason.

The court also found that the clerk had failed to comply with the requirements of § 10016, Crawford & Moses' Digest, that "The clerk of the county court of each county shall, on or before the first Monday in January in each year, make out and deliver the tax-books of his county to the collector, with his warrant thereunto attached, under his hand and the seal of his office, authorizing said collector to collect such taxes." This section of Crawford & Moses' Digest was amended by § 3 of act 16, *supra,* the amendment being to the effect that the clerk shall deliver the tax-books to the collector on or before the third Monday in February, instead of on or before the first Monday in January. The provision that he shall do so, with his warrant thereto attached, was unchanged. It has been held that the failure of the clerk to attach his warrant to the tax-books avoids the sale. *Stade* v. *Berg,* 182 Ark. 118, 30 S. W. 2d 211; *Keith* v. *Freeman,* 43 Ark. 296; *Hooker* v. *Southwestern Improvement Association,* 105 Ark. 99, 150 S. W. 398.

In the Stade Case, *supra,* the tax books were delivered with warrant attached, but not until January 22, and this delay was held to have invalidated the tax sale.

The court below found that the warrant had not been attached to the tax books; and that finding does not appear to be contrary to a preponderance of the evidence, and the sale must be held invalid for that reason.

There is a companion case to the one we have just discussed, which may be disposed of in this opinion, this being case No. 5401.

Three lots belonging to different owners were embraced in this confirmation suit, but those owners did not intervene until after the confirmation decree had been rendered. A lot belonging to one of these owners had been sold in 1931 for the taxes of 1930. Two other lots had been sold in 1933 for the taxes of 1932, and those sales had been confirmed.

In this act 119 of the acts of 1935 there appears a provision in § 9 thereof that "The owner of any lands embraced in the decree may, within one year from its rendition, have the same set aside insofar as it relates to the land of the petitioner by filing a verified motion in the chancery court that such person had no knowledge of the pendency of the suit, and setting up a meritorious defense to the complaint upon which the decree was rendered. The chancellor shall hear such defense according to the provisions of this act as though it had been presented at the term in which it was originally set for trial."

The owners appeared within a year of the date of the confirmation decree and moved to set it aside as to their lots, upon the allegations that they had no knowledge of the pendency of the confirmation suit and had a meritorious defense to the complaint upon which the decree was rendered. Those lots had been sold by the state, and the purchaser from the state was made a party defendant. The act, as appears from the portion above copied, allows one year in which this showing might be made.

These parties attacked the sales under which their lots had been sold to the state upon numerous grounds, several of which were sustained by the court, and upon this showing of a meritorious defense against the confirmation decree, that decree was vacated and their title was quieted upon their tendering the sum required by the act. This second and separate appeal which we are now discussing was prosecuted from that decree.

The sale of the lot in 1931 for the 1930 taxes was made before § 10084, Crawford & Moses' Digest, was amended by act 250 of the session of 1933, and § 10084, Crawford & Moses' Digest, was in full force and effect when the sale for the taxes was made in the year 1931. It was, therefore, required, under the law as it existed at the time the sale for the 1930 taxes was made, that ". . . the clerk shall also keep posted up in and about his office such delinquent list for one year." The testimony shows that this was not done, and the sale in 1931 was void for that reason. There was a showing in the case of the sales for both years that the clerk had failed to attach his warrant authorizing the collector to collect the taxes, and both sales were void for that reason.

The court was, therefore, warranted in finding, in this second case, that there was a meritorious defense within the meaning of § 9 of act 119 of 1935 and in vacating the confirmation decree for that reason. Section 6 of act 119 makes a showing that the tax sale was invalid a valid defense against the confirmation of the sale; and § 9 of the act provides that in a proceeding brought pursuant to its provisions "The chancellor shall hear such defense according to the provisions of this act as though it had been presented at the term in which it was originally set for trial." It appears, therefore, that the invalidity of the tax sale is a meritorious or valid defense against confirmation as well, within one year after, as before the rendition of the decree of confirmation.

We conclude, therefore, that the decrees in both cases Nos. 5373 and 5401 are correct, and both are, therefore, affirmed.

HOLT, J., disqualified and not participating.