McALLISTER *v.* WRIGHT, TRUSTEE.

4-5426                                     127 S. W. 2d 645

Opinion delivered April 3, 1939.

*W. P. Beard* and *W. A. Leach,* for appellant.

*C. A. Walls* and *Ector R. Johnson,* for appellee.

SMITH, J. On January 6, 1936, appellee, as trustee for the Union Trust Company, filed suit to foreclose a deed of trust executed to the trust company by W. K. Oldham and wife. On February 18, 1936, an amendment to the complaint was filed alleging that appellant, C. W. McAllister, claimed some interest in the lands described in the deed of trust sought to be foreclosed in which

amended complaint it was prayed that McAllister be summoned to answer and that his interest, whatever it may be, be adjudged junior and subordinate to the lien of the deed of trust.

On February 26, 1936, McAllister filed a separate answer and cross-complaint, in which he alleged ownership of some of the lands described in the deed of trust, under a purchase from the state in January, 1936, as "forfeited lands," and he exhibited deeds therefor from the State Land Commissioner. The deeds to McAllister from the State Land Commissioner were based upon the forfeiture and sale of the lands to the state on June 12, 1933, for the nonpayment of the taxes due thereon for the year 1932.

The plaintiff trustee filed a "Separate answer to the cross-complaint of defendant McAllister," in which it was alleged that this tax sale was void for numerous reasons, and it was prayed that the deeds from the State Land Commissioner to McAllister, based thereon, be canceled as clouds upon plaintiff's title, full tender having been made McAllister.

It very clearly appears that the sale of these lands for the 1932 taxes due thereon was void for one or more of the several reasons alleged by plaintiff trustee; but Act 142 of the Acts of 1935, page 402, was in effect when the pleadings, above referred to, were filed, and, as was said in the recent case of *Kansas City Life Insurance Co.* v. *Moss,* 196 Ark. 563, 118 S. W. 2d 873, "said Act was applicable in this case, because its provisions were in force and had been invoked, or were available, for the defense in the pending suit at the time of its repeal by and under the doctrine announced in the case of *Carle* v. *Gehl,* 193 Ark. 1061, 104 S. W. 2d 445. The defense under said act was not destroyed but continued in force under § 13284 of Pope's Digest."

We have a number of cases construing this act 142 of the Acts of 1935, the first being the case of *Carle* v. *Gehl,* cited in the case of *Kansas City Life Insurance Co.* v. *Moss,* from which we have just quoted, and which is one of the latest cases in which that act was construed.

These and the other cases are to the effect that "irregularities, informalities or omissions" in a tax sale which do not "go or extend to the power to make the sale of the property, or prevent the exercise of that power to sell," are cured by this act 142.

Section 1 of Act 142 provides that "Whenever the state and county taxes have not been paid upon any real or personal property within the time provided by law, and publication of the notice of the sale has been given under a valid and proper description, as provided by law, the sale of any real or personal property for the nonpayment of said taxes shall not hereafter be set aside by any proceedings at law or in equity because of any irregularity, informality or omission by any officer in the assessment of said property, the levying of said taxes, the making of the assessor's or tax book, the making or filing of the delinquent list, the recording thereof, or the recording of the list and notice of sale, or the certificate as to the publication of said notice of sale; provided that this Act shall not apply to any suit now pending seeking to set aside any such sale, or to any suit brought within six months from the effective date of this Act for the purpose of setting aside any such sale."

Without reviewing the defects alleged and shown to exist in the sale for the taxes of 1932, it may be said that they were such "irregularities, informalities and omissions" as would be cured by Act 142 if that act applies to the sale here under review. It will be observed that for this act to apply to and cure a tax sale which would otherwise be void, it is essential that the taxes have not been paid and that "publication of the notice of the sale has been given under a valid and proper description, as provided by law."

Here, the testimony shows that no record was made showing publication of the notice of sale, and the undisputed testimony of the Deputy County Court Clerk, the custodian of the tax records, and that of an experienced abstractor of land titles who had intimate knowledge of the tax and other records of that county affecting land titles, confirms this fact.

There is no record which shows when the delinquent list was filed, or when it was recorded, and there is no record showing that any notice of the sale was published. It is true that §§ 5 and 6 of Act 250 of the Acts of 1933 were in force when the sale was made. The effect of these sections was considered and announced in the recent case of *Hirsch and Schuman* v. *Dabbs and Mivelaz, ante* p. 756, 126 S. W. 2d 116, and what was there said need not be here repeated. Under the portion of this Act 250 held valid in the case of *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909, it was not required that the "notice of delinquent tax sale" should describe the lands which were delinquent, but they were referred to as being "contained and described in the list or record on file in the office of the clerk of the county court." Whether this was a "valid and proper description" of the delinquent lands within the meaning of Act 142 is a question which we need not here decide, as no notice of this sale was published.

It is argued that under Act 250 it is no longer necessary to make a record showing the date and manner of the publication of the notice of sale. This contention was made in the Hirsch Case, *supra,* but that contention was not sustained. On the contrary, it was held that the provisions of § 10085, C. & M. Digest, requiring the clerk of the county court to record the list and notice of sale, stating "in what newspaper said list was published and the date of publication, and for what length of time the same was published . . .," had not been repealed, and this record was not made.

In the recent case of *Emerson* v. *Voight,* 196 Ark. 129, 116 S. W. 2d 348, the notice of sale of delinquent lands was published, but the date of the last publication of the notice was less than two weeks before the day of sale. It was there held that as there was no publication of the notice conforming to law, this failure was not cured by Act 142.

It is argued that upon the production of the deeds from the State Land Commissioner based upon the sale for the 1932 taxes, a presumption arises that the sale was

conducted in a manner conforming to law. This is true. But this presumption is only *prima facie,* and may be shown to be untrue, and, as we have said, the testimony shows, as the court below found, that there was no publication of the notice of sale.

This fact alone would render the sale void, and operates to prevent the curative provisions of Act 142 from applying.

The right of the trustee to question the validity of the sale is raised. The trustee made tender to the tax purchaser, the sufficiency of which is not questioned, and the title of the trustee to the lands described in the deed of trust sufficiently supports his right to question the tax sale. Upon filing the suit to foreclose, a receiver was appointed, who has since been in possession of the land, and this possession is, of course, for the benefit of all parties in interest. The case of *Britt* v. *Harper,* 132 Ark. 193, 200 S. W. 787, is authority for granting the relief by canceling the deeds from the State Land Commissioner, as was done, based, as those deeds were, upon an invalid tax sale. In that case it was held that ''A mortgagee in possession has the right to take the necessary and proper action to protect that possession, and may maintain an action to cancel an invalid sale of the land for taxes.''

This suit is, in effect, one to redeem, and when a sufficient tender for that purpose was made and refused, nothing remained to do but to file suit to cancel the deeds and thus enforce the right of redemption, and the effect of canceling the commissioner's deeds was to permit a redemption.

This relief was prayed by the owner of the equitable title to land which had been forfeited to the state for the non-payment of the taxes due thereon in the case of *Woodward* v. *Campbell, Commissioner,* 39 Ark. 580. The lands there forfeited to the state had been purchased from the state with levee bonds. The sale by the state was held ineffective for the reason that payment for the lands of the state in levee bonds was no payment and the purchaser acquired no rights thereby. In holding that the equitable owner had the right to redeem and have the

sale by the state canceled, it was there said: "Statutes providing for redemption from tax sales always receive a liberal construction. Almost any right, either at law or in equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem. Certainly a party claiming the land under an executory contract to purchase it is the owner within the meaning of .the act. Cooley on Taxation, 366; *Rice* v. *Nelson,* 27 Iowa 148; *Rogers* v. *Rutter,* 11 Gray 410." See, also, *McMillen* v. *East Arkansas Investment Co.,* 196 Ark. 317, 117 S. W. 2d 724, and also *Emerson* v. *Voight, supra,* in which last cited case a deed of the Commissioner of State Lands was canceled because the sale on which the deed was based was void.

The decree of the court below, from which is this appeal, conforms to the views here expressed, and it is, therefore, affirmed.