4-6327                                    150 S. W. 2d 738

Opinion delivered April 28, 1941.

*Taylor Roberts* and *U. A. Gentry,* for appellant.

*Carmichael & Hendricks,* for appellee.

Griffin Smith, C. J.   Appellant, a citizen and tax-payer, brought suit against designated Pulaski county officials[1] to prevent payment for publishing the list of real property delinquent in 1940 on 1939 assessments.

---

[1] Defendants were L. B. Branch, sheriff and collector; J. G. Burlingame, county judge; L. A. Mashburn, county clerk, and Gus Bush, county treasurer.

The Arkansas Democrat Company intervened, alleging it had in good faith rendered the service under direction of the county clerk. The intervener also relied upon a letter written by the attorney general in June, 1935, in which the opinion was expressed that the publication was authorized.[2]

The trial court thought § 10084 of Crawford & Moses' Digest had been amended in such manner as to dispense with publication of the list of landowners and the description of property, but adjudged that the intervener should be paid because it had rendered the services under contract with the county clerk.

As stated by appellant, the two questions are (1) whether the list of delinquent lands and the names of taxpayers should be published, and (2) whether the printer may be paid if there was no legal authority for publication.

Because of distressed financial conditions in 1933, the Forty-ninth General Assembly carried into effect a program of retrenchment. In lieu of publication in full of delinquent land lists, a notice not larger than six inches double column was substituted. Act 250, March 30, 1933. In *Smith* v. *Cole,* 187 Ark. 471, 61 S. W. 55, the first four sections of the act were held unconstitutional.[3]

Sections five and six of act 250 amended §§ 10084 and 10085 of Crawford & Moses' Digest. It was held in *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909, that these sections were severable from those declared invalid in the Smith-Cole Case, and they were not affected by the decision.[4]

---

[2] The county officials demurred to the complaint. Plaintiff (appellant here) demurred to the intervention. It was overruled. Plaintiff elected to stand on the demurrer; whereupon the complaint was dismissed. In the decree it was said: "It is not necessary to pass upon the demurrer of the defendants to the complaint, as the judgment of the court in overruling the demurrer to the intervention relates back to the complaint and effectually disposed of all questions arising herein."

[3] The sections related to salaries of county officials.

[4] The mandate of act 250 was that the notice be published for two weeks between the second Monday in May and the second Monday in June.

It is conceded by appellees that act 250 dispensed with publication of delinquent lists and substituted notice.

Act 16 of the special session of 1933, approved August 25, amended act 250, but the requirement for publication is substantially the same.

It is appellees' contention that the section of act 170 of 1935 requiring publication of the "list of delinquent lands" was not repealed by act 282 of 1935.

The word "notice" appears twice in the pertinent parts of act 282, the final reference being that it shall be printed "as may be provided by law."

In *Hirsch and Schuman* v. *Dabbs and Mivelaz,* 197 Ark. 756, 126 S. W. 2d 116, act 250 of 1933 was discussed. The statement was made (referring to § 6 of act 250 as it amended § 10085 of Crawford & Moses' Digest) that ". . . under this amendatory section [a permanent record of lands returned delinquent] becomes indispensable. This amendatory section dispenses with the necessity of publishing the list and description of the delinquent lands. A six-inch, double column notice advises that delinquent lands will be sold, but does not describe the land to be sold. That information cannot be obtained from the published notice, but can only be had by examining the permanent record in which the delinquent list of lands has been copied."

Then there is reference to act 16, with the statement that it, also, dispensed with publication of land descriptions.

The construction given act 250 in the Hirsch Case was affirmed in *McAllister* v. *Wright, Trustee,* 197 Ark. 1156, 127 S. W. 2d 645.

From act 282 there was omitted the limitation found in acts 250 and 16 that not more than six inches of double column space should be used in giving notice that the delinquent list was on file with the county clerk.

It is insisted by appellant that § 5 of act 282, with § 5 of act 250, "furnish a complete law, clear and unmistakable in its terms, providing that the clerk of the sev-

eral counties shall record the delinquent list in a well-bound book, appropriately labeled, which shall become a permanent record and open to the inspection of the public; and, that there shall be published a notice to the effect that the delinquent lands recorded in said delinquent landbook will be sold on a day certain.''

In respect of the two cases appearing in the 197th Reports,[5] appellant says: ''Counsel evidently overlooked that this was the act[6] in effect when this court rendered the decisions . . . in which it was held that the act dispensed with the necessity of describing the land. Unless those decisions are to be overruled, this court has already decided this question against appellee's contention.''

The Schuman-Mivelaz Case was consolidated for trial with the Hirsch-Dabbs Case. In the Mivelaz Case the land was sold in 1933 for taxes assessed in 1932, while in the Dabbs Case the sale was in 1934 for taxes assessed in 1933. In the McAllister-Wright Case the sale was in 1933 for taxes assessed in 1932. The opinions were written in March and April, 1939, but dealt with the law applicable to sales for the years in which made. Hence, acts 170 and 282 were not involved, and the cases referred to do not control here.[7]

No emergency was declared in respect of act 282; hence, it became effective June 13. As to act 170 an emergency was declared, and it became a law when signed by the governor March 21, as to the provisions not in conflict with act 282, or other subsequent statutes.

Act 16 granted to taxpayers the right to pay in three installments. It was directed that the delinquent notice be printed once weekly between the first and third Mon-

---

[5] *Hirsch & Schumann* v. *Dabbs and Mivelaz*, and *McAllister* v. *Wright, Trustee, supra.*

[6] The reference seems to be to act 16 of the special session of 1933.

[7] Act 170 was house bill 258. Final vote in the house was had March 8. The bill was then sent to the Senate and passed March 12.

Act 282 was Senate bill 532 and was approved by that body March 12 and sent to the House, where it was passed March 13. It was returned to the Senate, March 13. The Fiftieth General Assembly (1935) adjourned March 14. Both acts, therefore, were on the governor's desk after adjournment—act 170 until March 21, and act 282 until March 28.

days in November, with sale on the third Monday in November. Final installment of taxes was payable not later than the third Monday in October.

Act 170 makes no reference to installment payments. It is entitled: "An act to provide a more efficient means of collecting real property taxes and to provide means by which the state may acquire good title to lands upon which taxes have not been paid."

The collector is required, not later than the first Monday in November, to file with the county clerk the so-called delinquent list. The clerk must cause the list to be published once weekly for two weeks between the second Monday in November and the second Monday in December. Following the descriptions a form of notice is prescribed, the effect of which, *prima facie,* is to vest in the state on the second Monday in December title to all real property not privately redeemed.[8] Duties of other officers, both state and county, are set out, but are not material here.

Act 282 is entitled: "An act providing for the settlement of all county officials and to amend §§ 1, 4, 5, and 6 of act 16 of the special session of August 14th, 1933, of the general assembly of the state of Arkansas, and for other purposes."

Section 1 declares delinquent all taxes unpaid after the first day of October. The collector's settlement must be made before the first Monday in December.

In amending § 1 of act 16, ultimate time for payment of the third tax installment is October 1.

Section 4 of act 282 amends § 4 of act 16 by making it the duty of the collector to file with the clerk his list of delinquent taxes not later than October 15.

Section 5 of act 282 amends § 5 of act 16, causing it, as amended, to read:

"There shall be published once weekly between the fifteenth day of October and the first Monday in November, in each year, in any county publication qualified by

---

[8] According to the form of notice, redemption could be by "any party of interest in said lands."

law, a notice to the effect that the delinquent lands, tracts, lots or parcels of lots so entered in said delinquent book will be sold, or so much thereof as is necessary to pay the taxes, penalties and costs due thereon, by the county collector, at the court house in said county (or district) on the first Monday in November next, unless the taxes, penalties and costs be paid before that time, and that the sale will be continued from day to day until the said tracts, lots and parcels of lots be sold. Said notice of sale of delinquent real estate for taxes shall be printed as may be provided by law.''

Section 6 of act 282 amends § 6 of act 16 by providing: ''The collector shall attend at the court house in his county on the first Monday in November next after the publication of the list as herein described'' . . . and shall offer the property for sale. In respect of lands not privately purchased, the collector is directed to bid all such off in the name of the state.

The question is, Did act 282 repeal act 170, or by implication amend § 2 of act 170; or, otherwise considered, are the two statutes in *pari materia?*

It would be difficult to adopt language more clearly expressing an intent to require publication of the delinquent list than that used in act 170. Section 9 fixes the printer's fee at twenty-five cents per tract; but, as heretofore shown, publication is for two weeks between the second Monday in November and the second Monday in December, while act 282 calls for publication ''once weekly between the fifteenth day of October and the first Monday in November.'' Under act 170 the notice following the delinquent list is that ''title to [the property] will vest absolutely in the state of Arkansas on the second Monday in December, . . . unless sooner redeemed by any party of interest in said lands upon the payment of the taxes for which said lands are now delinquent, together with all taxes which would have been paid up to the time of redemption, together with the penalty as fixed by law, officers' cost and cost of publication. Said redemption shall be made in the manner now provided by law.''

Section 4 of act 170 requires the clerk, before the first day of January in each year, to certify to the state land commissioner all delinquent property "which has not been redeemed within the time prescribed by this act."

It will be seen that act 170 does not contemplate a sale of delinquent property in the manner formerly known; but, on the contrary, the publication is intended as notice to delinquent taxpayers that unless they or those in interest redeem prior to the second Monday in December, title will vest in the state without further formality.

Act 282 directs that a sale be had, and authorizes the collector to bid in for the state all unredeemed property.

The acts, therefore, are in conflict both as to the time of publication and as to the duties of the collectors.

While the word "notice" is used in § 5 of act 282, § 4 refers to "a list or lists of all such taxes levied" and the descriptions attending the assessment of such property. The last sentence in the section is that "Said notice of sale of delinquent real estate for taxes shall be printed as may be provided by law"; and this is followed by a direction to the collector to offer the property for sale "on the first Monday in November next *after the publication of the list as herein described.*"

The only "list" described is the delinquent tax roll—not *the* notice, or *a* notice.

The use of particular words suggests on the one hand a possible intention by the general assembly to limit publication to the notice provided by act 16; yet on the other hand it seems to have been in the legislative mind that there would be publication "of the list as herein described."

Act 16 expressly limited notice to newspaper space not exceeding six inches, double column. It is noteworthy that in act 282 this restriction was abandoned. It is also a matter of common knowledge that since the attorney general's opinion was given in 1935, newspapers

generally have published the detailed delinquent lists, and the general assemblies of 1937 and 1939 did not deal with the subject.

We hold, therefore, that omission from act 282 of the provision contained in act 16 limiting newspaper space to six inches, double column, was evidence of an intention by the general assembly not to re-enact the old law, and that reference to publication of "the list herein described" could only mean the delinquent list. Hence, the county clerk was not without the authority questioned.

Affirmed.