LUEBKE *v.* HOLTZENDORFF.

4-6476                                              157 S. W. 2d 770

Opinion delivered November 24, 1941.

*Arthur R. Macom* and *M. F. Elms,* for appellant.

*Frances Drake Holtzendorff* and *W. A. Leach.* for appellee.

SMITH, J. The general taxes for the year 1933 were not paid on the tract of land here involved, and it was sold to the state. Remaining unredeemed, it was, in due course, certified to the State Land Commissioner, who, on November 24, 1939, conveyed the land to appellant Luebke for the consideration of $121, being $1 per acre for the land, plus $1 for the execution of the deed. Appellant took possession of the land, and made improvements thereon, which were found to be of the value of $588.

On January 29, 1939, the state filed suit, under the provisions of act 119 of the Acts of 1935, p. 318, to confirm and quiet its title to certain lands, the tract of land in controversy being included in the suit.

On December 19, 1940, appellee, Holtzendorff, filed an intervention in the confirmation proceeding, with a cross-complaint against appellant, in which he alleged that he was the owner of the land. He alleged that, for certain reasons which are not disputed, the tax sale to the state was void. He prayed that he be allowed to redeem from the sale, and that the deed from the State Land Commissioner to appellant be canceled.

To support his claim of title to and interest in the land, appellee introduced the following deeds:

(1)  From the Hazen, LaGrue & Slovac Road Improvement District of Prairie county to G. C. Stock, dated November 25, 1929.

(2)  Redemption deed from State Land Commissioner to G. C. Stock, dated November 25, 1929.

(3)  From Stock and wife to H. B. Wheatley, dated May 2, 1932.

(4)  From Stock and wife to George and Mary Mitchell, dated May 5, 1937.

(5)  Deed from George and Mary Mitchell to appellee, dated November 9, 1940.

(6)  Deed from H. B. Wheatley to appellee, dated December 16, 1940.

(7)  Deed from commissioners of Road Improvement District No. 12 of Prairie County to appellee, dated December 14, 1940. This last mentioned deed does not appear in the record, and may be dismissed from consideration.

The deed from the Hazen, etc., Road Improvement District was based upon a sale to the district in 1924 for the nonpayment of the 1923 delinquent road taxes. That deed, as stated, was dated November 25, 1929, and appellee, by mesne conveyances, has acquired that title, such as it may be.

A motion to dismiss the intervention was filed, based upon two grounds: (1) That appellee showed no interest

in the land, and (2) that he had not made the tender required by § 4663, Pope's Digest. This motion was overruled.

Section 6 of act 119, *supra,* (§ 8716, Pope's Digest), under the authority of which the confirmation suit was brought, provides that any person claiming any interest in any tract of land adverse to the state shall have the right to be made a party to the suit, "and, if made a party, the claims of any such person, . . . , shall be adjudicated. If any person, . . . , sets up the defense that the sale to the state was void for any cause, such person, . . . , shall tender to the clerk of the court the amount of taxes, penalty and costs for which the land was forfeited to the state, plus the amount which would have accrued as taxes thereon had the land remained on the tax books at the valuation at which it was assessed immediately prior to the forfeiture; provided, that there shall be credited on the amount due, any taxes that may have been paid on the land after it was forfeited to the state."

The history of this title, in relation to the general taxes thereon, is as follows: The land was sold to the state in 1925 for the nonpayment of the 1924 taxes. It was assessed as state land for the years 1925, 1926, 1927 and 1928. Stock purchased from the road improvement district on November 25, 1929, and received from the district a deed bearing that date. On the same day Stock redeemed the land from the state, as evidenced by the redemption deed from the State Land Commissioner. Stock paid the 1929 and 1930 taxes. He permitted the land to sell for the 1931 taxes, but on December 30, 1935, he redeemed the land, paying, at the same time, the 1932 taxes. The 1933 taxes were not paid, and the forfeiture to the state was certified March 16, 1939. The taxes for 1934, 1935, 1936, 1937 and 1938 were not paid. Appellant paid the 1939 taxes.

It was the sale for the 1933 taxes which the state sought to confirm under act 119, *supra,* and in the intervention appellee tendered the taxes for which the land sold and those "which would have accrued thereon had the land remained on the tax books at the valuation at

which it was assessed immediately prior to the forfeiture," as is required by § 6 of act 119.

It is conceded, upon the authority of the cases of *Todd* v. *Denton,* 188 Ark. 29, 64 S. W. 2d 331, and *Tri-County Highway Imp. Dist.* v. *Taylor,* 184 Ark. 675, 43 S. W. 2d 231, that the deed from the road improvement district did not operate to convey the title, for the reasons stated in the *Todd* v. *Denton* case, that "To give effect to appellant's deed (from the road improvement district, as in this case) would allow the district to receive the benefit of the payment of its debts prior to the passage of act 11 (the Martineau Road Law of 1927) by the Highway Commission and to keep the land of the delinquent owner also, thereby depriving the owner of any benefit under the acts (the Martineau Road Law and act 153 of the Acts of 1929 passed in aid of the Martineau Road Law)."

Now, appellee has Stock's interest, whatever it may be. Stock had a deed, which was executed before the opinion in either of the above cited cases was delivered. This deed gave Stock, not only color of title, but the actual title, but for those opinions. Under that title, Stock effected the redemptions above stated, and it appears inequitable to say that he and his vendees have no interest which may be protected by the redemption of the land from the subsequent sale for the general taxes thereon. Now, Stock and his vendee must continue to pay these taxes on the land if they would protect their lien, otherwise the lien would be lost, just as the original owner of land would lose his title if he failed to pay his taxes.

It was said, in the early case of *Woodward* v. *Campbell,* 39 Ark. 580, that "Statutes providing for redemption from tax sales always receive a liberal construction. Almost any right, either at law or in equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem. . . ." That holding has since been followed and reaffirmed in numerous cases where the right of redemption was questioned, one of the most

recent being the case of *McAllister* v. *Wright,* 197 Ark. 1156, 127 S. W. 2d 645.

This is not a possessory action. Appellee is seeking to effect the redemption authorized by § 6 of act 119, and to effect that purpose has made the tender which that act requires. Stock and his vendees were not volunteers in paying taxes and in redeeming the land for taxes not paid and for the nonpayment of which the land had sold. The first redemption was effected by a person claiming under a deed from the commissioners of a road improvement district to which the land had been sold for delinquent road taxes, and at that time, as has been said, this person had color of title to the land by virtue of this deed. He thus, for reasons to be further discussed, acquired a lien upon the land for the sum paid to redeem it and for the taxes subsequently paid. To protect that lien he must, of course, continue to pay taxes, or lose it. Just how this lien will finally be enforced is a question not presented by this record, but which will arise when the owner of the original title, who is not a party to this record, attempts to remove the cloud of this tax lien from his title.

We dispose of the present litigation when we hold, as we do, that Stock's vendees have the right, under § 6 of act 119, to defeat the confirmation of the 1933 tax sale by showing the invalidity of that sale and by making the tender which that act requires, and which has been done. The invalidity of the 1933 tax sale is conceded. But, if this were not true, its invalidity, for numerous irregularities in the sale, has been established, so that appellant's only title to the land rests upon the Land Commissioner's deed to him, which is based upon a void tax sale.

In the case of *Smith* v. *Thornton,* 74 Ark. 572, 86 S. W. 1008, the third headnote reads as follows: "One who has paid taxes on land under color of title has a lien on the land for the sums so paid which is a sufficient interest to entitle him to redeem from a tax sale."

In the case of *Waterman* v. *Irby,* 76 Ark. 551, 89 S. W. 844, a minor sought to redeem a tract of land which his ancestor had purchased from the donee in a donation

deed from the state made in 1872. The land was sold for taxes in 1891 to Waterman, who, after receiving a tax deed, went into possession and made valuable improvements and occupied the land for fourteen years. The right to redeem was denied by Waterman, upon the ground that the tax sale, upon which the donation deed was based, was void. After disposing of that question, Mr. Justice McCulloch said: "The right of appellee to redeem the land must also be sustained upon another ground, about which there is no dispute in the pleadings. His ancestor, who held under the donation deed, paid taxes on the lands for a number of years, and, having a lien therefor, it constituted such an interest in the lands as entitled him to redeem. *Smith* v. *Thornton,* 74 Ark. 572, 86 S. W. 1008. The writer hereof does not approve the doctrine just stated. He expressed his dissent therefrom in the case just cited, but the question must now be treated as settled by the decision in that case, and it is conclusive of the case at bar."

The decree of the court below, from which is this appeal, awarded the right to redeem, to be effective upon paying the taxes as required by § 6 of act 119, and by paying also the value of the improvements made on the land by appellant. This value was fixed by the court, and is not questioned. Appellee tendered into court the full amount found necessary by the court to effect the redemption, which appellant declined to accept, for the reason, apparently, that the court did not require appellee to reimburse him for the $120 which he had paid the Land Commissioner for his deed.

It is insisted, upon the authority of the cases of *Security Products Co.* v. *Booker,* 195 Ark. 843, 115 S. W. 2d 870, and *Reynolds* v. *Plants,* 196 Ark. 116, 116 S. W. 2d 350, that appellee was required to reimburse the purchase money paid for the land, and that appellant had the right to refuse the tender because this was not ordered in the decree.

This contention may be disposed of by saying that neither of the two cases cited referred to or professed to overrule the case of *Hurst* v. *Munson,* 152 Ark. 313, 238 S. W. 42, in which case it was held (to quote a headnote)

that "Where a deed from the Commissioner of State Lands was canceled as a cloud upon plaintiff's title, and defendant was reimbursed for taxes paid by him, it was not error to disallow him the price paid to the State Land Commissioner, nor to refuse to allow reimbursement for taxes paid by defendant's grantors where rents and profits received by such grantors were sufficient to cover their outlay for taxes."

The effect of permitting the redemption is to cancel the Land Commissioner's deed to appellant as a cloud, and if either the Security Products Company or the Reynolds case, *supra,* appear to be in conflict with the case of *Hurst* v. *Munson, supra,* they are, to that extent, disapproved.

The $120 paid the state by appellant for its deed had no relation to the taxes due thereon, and did not profess to have. It was an arbitrary price fixed by law for the sale of lands which had forfeited to the state. The state sold only this title, and its vendee bought with knowledge of the fact that his deed might be attacked, as many of such deeds have been, and that he would not acquire the title under its deed if it were shown, before the title had ripened through possession or otherwise, that the sale upon which the state's title was based was invalid.

Being apprised of this fact, the General Assembly has made provision for this contingency. Act 226 of the Acts of 1941, p. 552, reads as follows:

"Section 1. There is hereby appropriated to be payable from the land sales funds for the refund of purchase or donation price of state lands where title fails, the following:

"For the fiscal year ending June 30, 1942, (1) the sum of $15,000.

"For the fiscal year ending June 30, 1943, (1) the sum of $15,000.

"Section 2. The Commissioner of State Lands is hereby designated Disbursement Officer for the purpose of carrying out the provisions of this act. All vouchers drawn shall be subject to the approval of the State Comp-

troller. And all refunds shall be made as provided in § 1 of act 337 of the Acts of 1939.''

The act 337 referred to in act 226, just quoted, is an act in which § 1 thereof provides that ''The Commissioner of State Lands is hereby authorized and empowered to make refunds of amounts received by the state for tax-forfeited lands where title to such lands has failed.''

The decree from which is this appeal accords with the views here expressed, and it is, therefore, affirmed.