FOGGS *v.* CRUTCHER.

4-9041                                                226 S. W. 2d 48

Opinion delivered January 16, 1950.

Rehearing denied February 13, 1950.

*Wayne Foster,* for appellant.

*Byron Bogard,* for appellee.

GRIFFIN SMITH, Chief Justice. Foggs as owner of city property permitted it to forfeit for state and county taxes. Crutcher, as purchaser from the Land Commissioner, defends validity of the sale.

Four adjoining lots once belonging to the McEachin estate were assessed at $100 each for 1945. They were bought by the state at the Collector's sale November 13, 1946. Conveyances completed before the sale divided the four lots between three purchasers. C. S. Armstrong took the west third, Mable Carter the east third, and Nicholas Foggs the middle third. Two days after the November sale Armstrong applied to the County Assessor for apportionment of his tax liability under Act 359 of 1925, Ark. Stats., § 84-1209. Following a practice or custom of assessing in multiples of $5, the Assessor certified the west third to Armstrong at a valuation of $135. Mable Carter's east third was separately evaluated July 9, 1947, and she paid on $135. Each transaction was certified to the County Clerk.

It is stipulated that when the Carter apportionment was made the Assessor placed a valuation of $135 on the middle third, but did not certify this to the Clerk.

The Foggs third was certified to the state December 31, 1948, at the Assessor's uncertified valuation of $135. Crutcher purchased from the Commissioner January 4, 1949, before the state's title was confirmed. Foggs contends that the Assessor had no right to value his lot for more than a third of $400. Act 359, he says, is of no avail to the state because, if used against him as attempted here, there was want of due process because notice of the Assessor's purpose to change the assessment was not given. The statute directs the Assessor, upon written request, to segregate any part of a tract claimed by the petitioner, and to certify to the County

Clerk what part of the entire tax the designated portion shall bear. This certificate is recorded in a Tax Apportionment Book. Reference to this book must be made opposite the description as it first appears on the general assessment list. For his services in making the apportionment and certifying it, the Assessor may charge $1. Persons interested in the land, including any claiming the remnant, have recourse to a court of chancery if action be taken during the period allowed for redemption.[1] A condition is that tender of an amount sufficient to redeem the claimed interest must be made.

After the Assessor, under Act 359, had certified the Armstrong and Carter interests, Foggs' remaining third was untouched when the County Clerk transmitted to the Land Commissioner his official list of forfeitures.[2] The records kept by the Clerk did not show the Assessor's revised valuation of $135 until after suit was filed May 2, 1949. If Foggs, within the two years allowed for redemption, had undertaken to pay the delinquencies apportionable to him, an Assessor's certificate would have been necessary, costing $1. While the Assessor's intent to value Foggs' remnant at $135 is clearly indicated, the official act of reassessment was not completed. At all times after Carter's redemption in July, 1947, the record of delinquencies and forfeitures showed that the four lots sold for $100 each, that Armstrong and Carter redeemed on revised assessments of $135, and that of the aggregate of $400 in valuations, $130 was not paid on.

This is not a case where property sold for an illegal assessment; neither does it involve erroneous costs or unauthorized exactions. Owners of realty are under a duty to assess. At some period after the 1945 assessments were made, Foggs knew he owned the middle third

---

[1] If the first redemption is made less than three months before the period of redemption has expired, the remaining parties in interest are given three months "from the time of such redemption in which to bring [suit], but such three months shall not extend their time for redeeming."

[2] The Clerk's list is first certified to the Circuit Clerk as Recorder, where it is entered, thus vesting title in the State. The Clerk then transmits the certificate to the Land Commissioner. Pope's Digest, § 13876, Ark. Stats., § 84-1314.

of the combined lots. At *any* time after July 9, 1947, he had access to official records where the facts of uncontested reapportionments were reflected. Had he gone to the Assessor for a certificate, the valuation of $135 would have been disclosed. The redemption period did not expire until November 14, 1948, so the landowner had nearly a year and a half for action. Within that time there were at least two remedies: First, through petition to the Assessor, he could have asserted that the tentative untransmitted notation was unauthorized and unjust, and that the assessment should have been—as is now contended—$133.33. Failing in this, he could proceed by mandamus to compel the Assessor to certify an assessment of $133.33, or attempt by injunction to prevent a larger assessment. Alternatively, he could disregard the Assessor under his contention that Act 359 ignores due process. In this way a Clerk's certificate to the Treasurer of taxes unpaid on the combined lots would have reflected a residual assessment on $130. If the Clerk refused to issue the certificate, the taxpayer was not without recourse.

We cannot assume that the Clerk would not certify what his records actually showed, for there is nothing in the trial stipulation indicating that this official had knowledge of the Assessor's notation on this lot.

But suppose, for illustration, that Foggs, within the time allowed by Act 359, had asked for a certificate, paying the dollar fee: on a valuation of $135 the 1945 tax, penalty, and cost was $6.98, the tax alone being $5.85. Had the valuation been $133.33, the tax was ascertainable by dividing $5.85 by $135 and multiplying $133.33 by the result, or .0433. This gives $5.7731, or $5.77 when aggregate mills of less than half a cent are disregarded. To this tax, cost of 57¢ and penalty of 55¢ are added, making $6.89. For 1946, 1947, and 1948 costs and penalty were not chargeable, so $5.77 is multiplied by three to give $17.31, as against $17.55 charged by the Land Office. In each case a state deed added another dollar to the cost. Under a forfeiture for $135, anticipatory confirmation fee was $2.45, while for $133.33 it

would be $2.42. Crutcher purchased for $27.98,—a sum for which Foggs could have redeemed as late as January 3, 1949. Had the transaction been on the basis of $133.33, the price would have been $27.62—a difference of 36¢. Since the statutory fee of $1 for an Assessor's certificate was not included, actual redemption could have been effectuated for *64 cents less* than the correct totals even when the assessment was $135.

Appellants' position is somewhat anomalous. The only method by which Foggs could proportionately redeem is provided by Act 359, which by its terms invests the Assessor with discretion, an abuse of which would be corrected by a court of chancery; yet Foggs rests his cause upon a process by which certificate fees were paid by two others who caused the segregation, then he attacks the Act because it did not require that he be personally notified of facts within his constructive knowledge.

Forfeiture and sale having been under correct descriptions and for a proper amount, and not under the tentative assessment of which appellants complain, we agree with the Chancellor that the sale was neither void nor voidable under the facts shown by stipulation. The adjustments complained of were subject to judicial review at a time when all rights, whatever they may have been, could have been fully protected.

Act 359 does not deny due process. There is no constitutional requirement that notice of assessments be given in a particular way. On the contrary, the General Assembly could dispense entirely with publication as the term is ordinarily construed. *Carle* v. *Gehl,* 193 Ark. 1061, 104 S. W. 2d 445. In that case Mr. Justice Butler said for a unanimous Court: "The Legislature could not dispense with the necessity for the listing and assessing of the property under a valid description, or for the levying of the tax upon the property according to its value at a rate not in excess of constitutional limits, or for a sale of the property under proper description by the collector thereunto duly authorized for delinquent and unpaid taxes, or for the sale of the property by the collector under the power".

These comments were made in discussing Act 142 of 1935—an Act that did not dispense with publication, thus leaving compliance with former laws a part of due process.[3]

In *Hagar v. Reclamation District,* 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569, Mr. Justice Field of the United States Supreme Court wrote of taxation in its relation to due process. An excerpt from the opinion is printed in the margin.[4]

Affirmed.

---

[3] For cases dealing with publication and notice, see *Moses* v. *Gingles,* 208 Ark. 788, 187 S. W. 2d 892; *Burbridge* v. *Crawford,* 195 Ark. 191, 112 S. W. 2d 423; *Thomas* v. *Branch,* 202 Ark. 338, 150 S. W. 2d 738; *Cecil* v. *Tisher and Friend,* 206 Ark. 962, 178 S. W. 2d 655; *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909; *Benham* v. *Davis,* 196 Ark. 740, 119 S. W. 2d 743; *Hirsch and Schuman* v. *Dabbs and Mivelez,* 197 Ark. 756, 126 S. W. 2d 116.

[4] Said Mr. Justice FIELD: "Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally specific taxes on things or persons or occupations. In such cases the legislature in authorizing the tax fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded. . . . But where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, a different principle comes in. The officer in estimating the value acts judicially, and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization sitting at designated periods provided by law, to hear complaints respecting the justice of the assessments. The law, in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed if the tax be not paid, by a sale of the delinquent property, is due process of law." [In the case before us Act 359 supplies due process by allowing an appeal to Chancery].